In re ABBOTT-GAMBLE CO. .

Appeal of COAL TAR PRODUCT CO.

(Circuit Court of Appeals, Second Circuit. March 11, 1912.)

No. 166.

1. MECHANICS' LIENS (§ 132*)—NOTICE OF LIEN—FILING—TIME.

Under Lien Law New York (Consol. Laws 1909, c. 33) § 10, which requires notice of lien to be filed within 90 days after the last item of work or materials is furnished, touching up bare places on the brick floor of a railroad bridge, under a contract requiring a covering of hot waterproofing materials, did not constitute an item, if the bare places were produced, after the contractor's work was fully done, by causes for which he was not responsible.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 190–207; Dec. Dig. § 132.*]

2. MECHANICS' LIENS (§ 132*)—NOTICE OF LIEN—FILING—TIME.

A contractor for work on bridges built by a railroad company over highways is not entitled to a lien if notice of the lien was not filed within 90 days after the last item of work or labor was furnished, as required by Lien Law New York (Consol. Laws 1909, c. 33) § 10.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 190–207; Dec. Dig. § 132.*]

3. MECHANICS' LIENS (§ 132*)—NOTICE OF LIEN—FILING—TIME.

Furnishing wood blocks for the floor of a bridge over railroad tracks, after other blocks had been rejected as not conforming to contract, constituted a furnishing of material within Lien Law New York (Consol. Laws 1909, c. 33) § 10, which requires notice of lien to be filed within 90 days after the last item of work or material is furnished under a contract.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 190–207; Dec. Dig. § 132.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the Abbott-Gamble Company, bankrupt. From an order affirming an order on a claim of the Coal Tar Product Company, claimant appeals. Modified and affirmed.

Edo E. Mercelis (Henry M. Dater, of counsel), for appellant.

Bowers & Sands (Middleton S. Borland and Gerald S. O'Loughlin, of counsel), for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. [1] Some reference was made on the argument to section 12 of the Lien Law of New York (chapter 38, Laws of 1909 [chapter 33, Consol. Laws 1909]), which provides for liens on account of public improvements, but it is understood that this section is not relied on; the claim being based wholly on section 10 of the same act. This section provides for the filing of notice of lien during the progress of the work or "within ninety days after completion of the contract, or the final performance of the work, or the final furnishing of the materials, dating from the last item of work performed or materials furnished."

There were separate contracts, and the only question here is when the work under each was finally performed or materials finally furnished. More specifically the question whether something that was done at the several localities where the work was performed, on dates subsequent to the doing of the work called for, was or was not, in each instance, a "last item of work performed or materials furnished" under the contract, or was something additional. Unless the claimant can establish that these final items were a part of what each contract called for, its claim of lien was properly dismissed.

The Brooklyn Heights Railroad Company undertook to reconstruct a portion of its roadbed which necessitated the construction of two sets of bridges. One set is referred to in the record as "railroad bridges," which carried the railroad over the street or avenue. The other set is referred to as "highway bridges," which carried the street or avenue over the railroad. The railroad company contracted with the bankrupt corporation for the construction of solid floors upon both sets of bridges. The bankrupt made a written contract for the waterproofing of the floors of the railroad bridges. The contract is an elaborate one embodying many of the clauses giving specifications, etc., which were in the contract between the railroad and the bankrupt. Among these are the clauses usually found in construction contracts providing that the work shall be done to the satisfaction of the engineer in charge, who is made the sole judge of the quality and quantities of materials supplied and work executed and of the interpretation of the specifications and provisions of the contract, the production of his certificate being made a condition precedent to the right to receive any money under the contract.

The contract after detailing the method of laying flooring with felt, bricks, and hot waterproofing material provides that the last "course of bricks shall be laid flat in the compound, and all joints poured full

with hot compound and last the entire area given one coating of hot compound." This last course was laid and coated as required on May 28, 1908. On November 25, 1908, more than 90 days after this was done, the engineer in charge, who wished to certify to the whole work done for the railroad company by the bankrupt, including much besides what claimant did, asked the president of claimant to have its men touch up some bare places on the surface where the red brick showed in consequence of the top coating of waterproof material having been chipped off. The contract provided that "no unnecessary walking or working on this protective covering will be allowed until thoroughly hardened." But there is no suggestion that this chipping off was caused by the violation of this requirement by claimant's employés. Had it been thus caused, it might be said that the work was not finished until the chipped pieces had been made whole. The trouble was caused, after claimant's work was done and hardened, by other workmen who were engaged in building stone walls (presumably side walls) on the bridges and used bars in ramming the broken stone for these walls. The claimant was under no obligation to make good this damage done by others, but did what the engineer asked it to, no doubt to facilitate his giving of a certificate for the whole work (including that done by others as well as that done by claimant) so that the bankrupt might receive final payment and thus be put in funds to pay its subcontractors. At the same time that they touched up and recovered these exposed places, claimant's workmen filled up any crevices between the bricks where waterproofing was missing, but we are not satisfied that this additional work can fairly be considered a "last item" of work done under the contract; for aught that appears the jarring of the cars which were then running over the bridges might have caused it. The date of the completion of the work was, therefore, May 28, 1908, and the notice of lien was not filed until more than 90 days thereafter.

[2] In the case of the "highway bridges," no formal contract was executed, the agreement between claimant and the bankrupt was made by letters exchanged. On August 28, 1907, claimant offered, first, to waterproof certain concrete with felt and waterproofing compound, second, to furnish and lay certain wood blocks in a designated manner. On September 8, 1907, the bankrupt replied accepting the offer to waterproof the cement, such acceptance constituting a contract for such work. It did not accept the offer to furnish and lay wood blocks, but stated that, as one of the considerations of the waterproofing contract, it would reserve the privilege of purchasing from claimant any or all of the wood blocks it might require for these bridges specifying size, make, and prices. It was eventually agreed between the parties that the claimant should furnish certain specified wood blocks waterproofed or preserved with creosote.

The claimant fully completed the work called for under its contract for waterproofing the concrete on June 17, 1908. No complaint was ever made of this, no overhauling or retouching was ever called for. No notice of lien for this work was filed until more than 90 days after June 17, 1908, and therefore no lien was secured therefor.

[3] The claimant delivered wood blocks purporting to be of the kind called for by the third contract; the last of such deliveries being made on June 13, 1908. These blocks were laid by the bankrupt, but promptly began to give trouble particularly at two bridges, swelling and rising off their foundation during heavy rain. The engineer in charge and his assistant looked into the matter, making a careful inspection of the blocks. They cut some of them open, finding that they did not contain a sufficient quantity of creosote to fit them for their purpose. They found that some of them would float when placed in water, whereas the specifications for the work required the specific gravity of the blocks after treatment to be greater than that of water. They rejected the blocks furnished at two bridges and required them to be removed, insisting that blocks complying with the specifications should be substituted for them. After a long controversy and much correspondence, claimant furnished blocks which the engineer accepted as specification blocks on November 25, 1908.

Although no formal contract for the blocks was executed, the evidence shows that both parties were familiar with the provisions of the contract between the railroad company and the bankrupt for building the bridges. There can be no doubt that both of them understood that the wood blocks which the one was to order and the other was to furnish should conform to the specifications as to size, material, character, etc., which that contract called for. The evidence shows that a large number of them did not so conform, and in our opinion, until proper specification blocks were delivered in their place, the contract of the claimant was not fully completed. That being so, this delivery on November 23, 1908, was a "last item of materials furnished," and, since a notice of lien in proper form was filed within 90 days after that date, the statutory lien was secured.

The order of the District Court should be modified so as to provide for the payment of the amount secured by this lien, and in all other respects such order is affirmed.