UNITED STATES of America, for Use
and Benefit of J. A. EDWARDS &
CO., Inc., Plaintiff,

v.

BREGMAN CONSTRUCTION CORP.,
New Amsterdam Casualty Company
and Ben B. Greene, Inc., Defendants.

Civ. No. 17584.

United States District Court
E. D. New York.

April 23, 1959.

See also 156 F.Supp. 784.

Irving Levine, New York City, for
plaintiff.

M. Carl Levine, Morgulas & Foreman,
New York City, Albert Foreman, New
York City, of counsel, for defendants,
Bregman Const. Corp. and New Amsterdam Casualty Co.

**518**

ZAVATT, District Judge.

This is a suit on a Miller Act payment bond, 40 U.S.C.A. § 270a(a) (2), instituted by the use plaintiff, who furnished material to the defendant, Ben B. Greene, Inc., the electrical subcontractor of the defendant Bregman Construction Corp., the prime contractor. The subcontractor is in default of appearance and pleading and took no·part in the trial. The suit against the prime contractor and its surety, New Amsterdam Casualty Company, was instituted pursuant to 40 U.S.C.A. § 270b. The complaint also alleges a claim against the defendant, Ben B. Greene, Inc., for goods sold and delivered. After a trial to the court without a jury, the court makes the following findings of fact:

### Findings of Fact

1. On February 24, 1956, the defendant, Bregman Construction Corp. (hereinafter referred to as the prime contractor), entered into a written contract (No. DA 30–075 Eng. 7083) with the United States of America (hereinafter referred to as the Government) to furnish all the labor and materials and perform all of the work required to construct a Special AAA Facility at Lloyd Harbor, New York, for the sum of $864,442.

2. Said contract provided that the Government would make payments to the prime contractor, as the work progressed, at the end of each calendar month based on estimates made and approved by the Government's contracting officer; that in making such payments the Government would retain 10% of the estimated amounts until final completion and acceptance of all of the work covered by the contract; that after 50% of the work had been completed the contracting officer could make payment of the remaining monthly payments without retaining 10% of the estimated amounts, if he found that satisfactory progress was being made by the prime contractor; that final payment, including retained percentages, was not to be made until the final completion and acceptance of the work.

3. On February 24, 1956, pursuant to 40 U.S.C.A. § 270a(a)(2), the prime contractor furnished to the Government a payment bond in the sum of $432,221 signed by the prime contractor as Principal and the defendant, New Amsterdam Casualty Company, as Surety, conditioned upon the prompt payment by the prime contractor "to all persons supplying labor and material in the prosecution of the work provided for in said contract."

4. On March 16, 1956, the prime contractor entered into a subcontract in writing with the defendant, Ben B. Greene, Inc. (hereinafter referred to as the subcontractor), by the terms of which the subcontractor agreed to furnish all labor, materials, tools, equipment, appliances and other things necessary to complete that portion of the electrical work (required to be performed under the prime contract) specified in the subcontract and the prime contractor agreed to pay to the subcontractor therefor the sum of $86,090 in monthly installments equal to 90% of the monthly estimate submitted by the subcontractor and accepted by the prime contractor. These monthly payments were not to be made, however, until the prime contractor received payment from the Government for the work performed by the subcontractor.

5. Shortly after the subcontractor entered into said subcontract with the prime contractor, the use plaintiff was advised by the subcontractor as to said subcontract and that the use plaintiff would receive orders from the subcontractor for the major part of the materials which it would require in the performance of its subcontract.

6. Between October 19, 1956 and January 14, 1957, the use plaintiff furnished materials in the prosecution of the work provided for in the prime contract by delivering the same to the site of the Special AAA Facility at Lloyd Harbor, New York. The materials were so furnished pursuant to a series of separate orders received by the use plaintiff from the subcontractor at agreed prices

which were fair and reasonable. Of the orders so received and the materials so furnished (not fully paid for) the dates of delivery, unpaid balances of the agreed prices and fair and reasonable values, subcontractor's purchase order vouchers and subcontractor's invoice numbers are as follows:

| Order No. | Date of Delivery | Invoice No. | Unpaid Balance |
|---|---|---|---|
| 2127 | 10/19/56 | 7404 | $ 105.80 |
| 2177 | 10/29/56 | 7416 | 696. |
| 2189 | 10/22/56 | 7526 | 330. |
| – | 10/27/56 | 7626 | 6,289.13 |
| – | 11/29/56 | F7966 | 63.27 |
| – | 11/29/56 | 8041 | 12.93 |
| 2121 | after 12/13/56 | 8481 | 2,009. |
| – | after 12/ 7/56 | 8491 | 177. |
| – | after 1/ 2/57 | 8535 | 1.98 |
| – | 1/14/57 | 8649 | 59.84 |
| | Total | | $9,744.95 |
| | Less credits conceded by use plaintiff at the trial | | 285.30 |
| | Unpaid balance | | $9,459.65 |

7. The use plaintiff billed the subcontractor separately for each separate order he received from the subcontractor and filled, including the orders enumerated under Finding of Fact No. 6, and as to each such separate invoice received from the use plaintiff which the subcontractor paid in full or in part the subcontractor made such payments with reference to a designated invoice and purchase order and the use plaintiff credited each payment accordingly. There was no entire contract between the use plaintiff and the subcontractor for all of the materials so furnished by the use plaintiff nor did they treat said orders and materials furnished pursuant thereto on a running account basis.

8. On February 15, 1957, the use plaintiff gave written notice to the prime contractor and the surety that it claimed $9,598.42 for electrical supplies furnished to the subcontractor for use in the prosecution of the work provided in the prime contract; that the materials were so furnished at various times between August 20, 1956 and January 14, 1957. Said notice was served by mailing the same by registered mail, postage prepaid, addressed to the prime contractor at the place where it conducted its business and by similarly mailing a copy of said notice to the surety addressed at 60 John Street, New York 38, N.Y. The said addressees received said notices on February 18, 1957.

9. The prime contract was finally settled on September 30, 1957.

10. This suit was commenced on May 2, 1957, within one year after the date of final settlement of the prime contract.

### Timeliness of the 90 day notice

### Defendants' Contention

The defendants, Greene and Bregman, contend that the 90 day notice was not timely as to the materials furnished during the month of October 1956 and that, therefore, the use plaintiff is not entitled to judgment based upon the first four deliveries listed above, the agreed prices of which total $7,480.77. They thereby concede that the use plaintiff is entitled to judgment as to the remaining items totalling $1,978.88.

The defendants contend that, since the materials were not furnished pursuant to an entire contract or on a running account basis but, rather, on a separate order basis, § 270b, required the use plaintiff to serve separate notices within 90 days from the date of the last delivery under each separate order; that, therefore, the 90 day notice is not timely as to the materials furnished between October 19 and October 27, 1956. Because there were separate orders, billed separately, the defendants contend in their memorandum of law that each order and delivery pursuant thereto was a separate contract; that the use plaintiff treated each order "as completely independent orders having nothing to do with the other orders which the plaintiff now lumps."

The defendants cite no decision in which the Miller Act has been so construed. It would appear from the memoranda of law submitted to the court by counsel for the use plaintiff and counsel for the defendants and the independent research of the court that this is a case of first impression. The defendants have made no attempt to substantiate their contention by an analysis of § 270b or by submitting to the court the legislative history of the Miller Act or of its predecessor, the Heard Act, 33 Stat. 811, 58th Cong. 3rd Sess. (1905), c. 778. They argue, merely, that the Miller Act should be construed by analogy to section 10 of the New York Lien Law, McKinney's Consol.Laws, c. 33 (relating to the filing of notices of lien for a private improvement) which they contend, is properly subject to the construction they would have this court place on the Miller Act, 40 U.S.C.A. § 270b. They cite New York cases which relate to only one of the circumstances under which notice of such a lien must be filed within four months, i.e. that,

where the work has been performed or the materials have been furnished pursuant to a contract, the notice must be filed "within four months after the completion of the contract." [1] They overlook the fact that where labor is not performed or material is not furnished pursuant to a contract the four month period runs from "the final performance of the work, or the final furnishing of the materials, dating from the last item of work performed or materials furnished." They cite no decision by a New York court to support their contention that notice of a lien for a private improvement must be filed within four months after the furnishing of material under each separate order. Assuming arguendo, that each separate order for material is an offer to purchase; that the agreement to furnish the material so ordered is an acceptance thereof; that furnishing the material is the completion of a contract, no reported New York decision holds that a notice of lien must be filed within four months of each such completed contract. The cases cited by the defendants relating to § 10 of the New York Lien Law, In re Abbott-Gamble Co., 2 Cir., 1912, 195 F. 465; Nelson v. Schrank, 1947, 273 App.Div. 72, 75 N.Y.S.2d 761, all relate to instances where there was an entire contract for the delivery of material or performance of work. In such instances, § 10 of the New York Lien Law clearly requires that the notice of lien be filed "within four months after the completion of the contract." This language of the New York statute suggests that "contract" refers to an entire contract.

### The Miller Act

■ 40 U.S.C.A. § 270a [2] provides that, before a contract exceeding $2,000 in amount for a public improvement is

---

1. "§ 10. Filing of notice

"Notice of lien may be filed at any time during the progress of the work and the furnishing of materials, or, within four months after the completion of the contract, or the final performance of the work, or the final furnishing of the materials, dating from the last item of work performed or materials furnished."

2. "§ 270a. Bonds of contractors for public buildings or works; waiver of bonds covering contract performed in foreign country.

awarded, the contractor shall furnish two bonds: a performance bond for the protection of the United States and a payment bond "for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person", 40 U.S.C.A. § 270b [3] specifies who are the beneficiaries of the payment bond and gives them the right to sue on that bond. As one who furnished material in the prosecution of

"(a) Before any contract, exceeding $2000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such persons shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as 'contractor':

"(1) A performance bond with a surety or sureties satisfactory to the officer awarding such contract, and in such amount as he shall deem adequate, for the protection of the United States.

"(2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person. Whenever the total amount payable by the terms of the contract shall be not more than $1,000,000 the said payment bond shall be in a sum of one-half the total amount payable by the terms of the contract. Whenever the total amount payable by the terms of the contract shall be more than $1,000,000 and not more than $5,000,000 the said payment bond shall be in a sum of 40 per centum of the total amount payable by the terms of the contract. Whenever the total amount payable by the terms of the contract shall be more than $5,000,000 the said payment bond shall be in the sum of $2,500,000.

"(b) The contracting officer in respect of any contract is authorized to waive the requirement of a performance bond and payment bond for so much of the work under such contract as is to be performed in a foreign country if he finds that it is impracticable for the contractor to furnish such bonds.

"(c) Nothing in this section shall be construed to limit the authority of any contracting officer to require a performance bond or other security in addition to those, or in cases other than the cases · specified in subsection (a) of this section."

**3.** "§ 270b. Same; rights of persons furnishing labor or material.

"(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelop [sic] addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons.

"(b) Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the date of final settlement of such contract. The United States shall not be liable for the payment of any costs or expenses of any such suit."

the work for which it has not been paid, the use plaintiff is one of those beneficiaries. The exercise of that right by such a beneficiary is conditioned upon compliance with a condition precedent by those beneficiaries who have "no contractual relation * * * with the contractor furnishing said payment bond" but who do have "direct contractual relationship with a subcontractor", Fleisher Engineering & Construction Co. v. United States, for Use & Benefit of Hallenbeck, 1940, 311 U.S. 15, 18–19, 61 S.Ct. 81, 83, 85 L.Ed. 12. That condition precedent requires that a person such as the use plaintiff must give written notice to the contractor "within ninety days from the date on which such person * * * supplied the last of the material for which such claim is made * * *" stating the facts specified in 270b(a). Although the Miller Act is highly remedial in nature and is to be liberally construed in order to properly effectuate the Congressional intent to protect those who furnish labor or materials for public works, and the strict letter of the Act must yield to its evident spirit and purpose when this is necessary to give effect to the intent of Congress and to avoid unjust and absurd consequences, Lau Ow Bew v. United States, 1892, 144 U.S. 47, 59, 12 S.Ct. 517, 520, 36 L.Ed. 340; Territory of Hawaii v. Mankichi, 1903, 190 U.S. 197, 213, 23 S.Ct. 787, 789, 47 L.Ed. 1016; Glassell-Taylor Co. v. Magnolia Petroleum Co., 5 Cir., 1946, 153 F.2d 527, 529–530; United States for Benefit and on Behalf of Sherman v. Carter, 1957, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776; Stickells, Bonds of Contractors on Federal Public Works—the Miller Act, 36 Boston University L.Rev. 498, 507–509, such a salutary policy does not justify ignoring plain words of limitation and imposing wholesale liability on payment bonds. Clifford F. MacEvoy Co. v. United States, for Use and Benefit of Calvin Tomkins Co., 1944, 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163.

The plain words of limitation upon the right of this use plaintiff to sue on the payment bond are that the 90 day notice be given "within ninety days from the date on which such person * * * furnished or supplied the last of the material for which such claim is made * * *." The 90 day period is not stated to be measured from the date of the last delivery of material under an entire contract or on a running account or under each separate order. The Miller Act contemplates one such notice within 90 days from the furnishing of the last material furnished in the prosecution of the prime contract from which claim is made. If the material is so furnished pursuant to one entire contract, obviously the measuring date will be the date when the last material is so furnished. If the material is furnished pursuant to a series of separate contracts, the measuring date will be the date when the last material is furnished under the last contract. This is the internal sense of the Miller Act. It should be construed sensibly and its plain purposes should not be defeated by a narrow interpretation.

The interpretation of § 270b(a) urged by the defendants would lead to absurd results. A laborer in the employ of a subcontractor on a day-to-day basis would be required to serve a notice within 90 days of each day of his employment because each such day of employment would be pursuant to a separate contract. Every material man of every subcontractor who furnished materials pursuant to separate orders, rather than pursuant to one entire contract, would be required to serve separate notices as to each such separate contract, even though the separate contracts were all related to the prosecution of the work provided for in the main contract. The office of a prime contractor who has undertaken to construct a large public building, such as the Pentagon, for example, might be flooded with 90 day notices from every unpaid day-to-day laborer employed by numerous subcontractors and by every person furnishing materials to numerous subcontractors. The offices of the sureties of such a prime con-

tractor would also be flooded with correspondence and, conceivably, copies of the claims of laborers and material men. Were this court to yield to the argument of these defendants, contractors and sureties throughout the country would be compelled to seek Congressional relief in the form of an amendment to 270b.

There is no merit to the defendants' interpretation of this statute. It is supported neither by the language of the Miller Act nor by logic, common sense or precedent. The court has examined into the history of the Heard Act, supra; its predecessor entitled "An Act for the protection of persons furnishing materials and labor for the construction of public works", and the Miller Act.[4] It was H.R. 8519 that was enacted into law by the Congress and is now cited as 40 U.S.C.A. §§ 270a and 270b. The legislative history casts little if any light upon the Miller Act except that of all the House bills introduced, which provided for notice to the contractor, the time within which to give such notice was measured either from the time when the prime contract was completed or from the time when the claimant ceased to perform labor or furnish materials or from the time when the claimant performed the last labor or furnished the last material. It is of interest to note that, at the hearing held on May 3, 1935, the Treasury Department submitted to the Judiciary Committee of the House of Representatives a bill requiring no notice to the contractor but providing that no suit on the payment bond could be commenced "prior to ninety days from the time when payment was due for the labor, services or material for which the claim is made." Mr. William K. Laws, Chief of Legal Section, Procurement Division, Treasury Department, in reply to a question from Congressman Miller, agreed that, under this provision, a claimant could sue from time to time (under an installment contract for example) as each sum became due instead of being required to wait until 90 days after he had furnished the last item of labor or material, or both. And, in response to a question by another member of that Committee, he replied that the Treasury bill would "permit the splitting up of the total amount." The committee recommended, instead, H.R. 8519 which measures the 90 days from the date on which the last item of labor was performed or material furnished. Thus, the 90 day waiting period before suit and the 90 day period within which to give notice to the contractor do not permit of "splitting up" but rather contemplate one waiting period and one 90 day notice. The court finds nothing in the legislative history of the Miller Act or earlier statutes relating to the general subject which justifies the strained construction of 270b advanced by the defendants.

### Conclusions of Law

1. The court has jurisdiction of the subject matter of this suit and of the parties thereto.

2. The use plaintiff had no contractual relationship express or implied with the contractor but did have direct contractual relationship with the subcontractor.

3. The use plaintiff gave written notice to the contractor within 90 days from the date when it furnished the last of the material for which its claim was made and this suit was instituted in accordance with the provisions of 40 U.S.C.A. § 270b(a).

4. This suit was instituted on the bond in accordance with the provisions of 40 U.S.C.A. § 270b(b).

5. The use plaintiff is entitled to judgment against all of the defendants

---

4. Bonds of Contractors on Public Works. Hearings before Committee on the Judiciary, House of Representatives, First Session, 74th Congress on H.R. 2068, H.R. 4027, H.R. 4231, H.R. 4461, H.R. 5054, H.R. 6018, H.R. 6115, H.R. 6677, H.R. 8519, March 8, 22, April 26, May 3, 1935; Report No. 1263 of Committee on the Judiciary, House of Representatives, 74th Congress, 1st Session, on H.R. 8519; Report No. 1238, Committee on the Judiciary, Senate, on H.R. 8519; Congressional Record, Vol. 79, Part II, page 11702.

in the amount of $9,459.65 with interest and costs.

Judgment will be entered accordingly in favor of the use plaintiff and against the defendants. The parties will settle an appropriate judgment, together with such proposed additional findings of fact and conclusions of law as are deemed by them to be necessary, within 15 days.