375 F.2d 194
 UNITED STATES of America for the Use of GENERAL ELECTRIC COMPANY, Plaintiff-Appellee,
v.
H. I. LEWIS CONSTRUCTION CO., Inc., and Aetna Insurance Company, Defendants and Third-Party Plaintiffs,
v.
The AETNA CASUALTY AND SURETY COMPANY, Third-Party Defendant-Appellant.
 No. 246.
 Docket 30807.
 United States Court of Appeals Second Circuit.
 Argued December 14, 1966.
 Decided March 9, 1967.
 
 Patrick J. Leahy, Black, Wilson & Hoff, Burlington, Vt., for plaintiff-appellee.
 James J. McNamara, Burlington, Vt., Elmer W. Beasley, Hartford, Conn., McNamara, Fitzpatrick & Sylvester, Burlington, Vt., for third-party defendant-appellant.
 Before WATERMAN, MOORE and KAUFMAN, Circuit Judges.
 WATERMAN, Circuit Judge:
 
 
 1
 On March 20, 1961, H. I. Lewis Construction Co., Inc., of Middletown, Pennsylvania (Lewis) entered into a contract with the United States to construct certain Radar Facilities at North Concord Air Force Station, North Concord, Vermont, and Aetna Insurance Company became surety on Lewis's performance and payment bonds required by the Miller Act, 40 U.S.C. § 270a-e.[1]
 
 
 2
 On June 1, 1961, Lewis, as the prime contractor, subcontracted with The Dole Company of Bangor, Maine (Dole) for the performance of the electrical work provided for in the General Contract between Lewis and the United States. The Aetna Casualty and Surety Company, a different company from Aetna Insurance Company, became surety in favor of Lewis on Dole's subcontract performance and payment bonds. The Aetna Casualty and Surety Company's performance bond was conditioned that Dole would perform according to its terms its subcontract with Lewis. Its labor and material payment bond was conditioned that Dole would pay all persons supplying Dole with labor and materials in the prosecution of the work provided for in the Dole subcontract with Lewis, subject to conditions stated therein, one of which was designed to meet the statutory requirements of 40 U.S.C. §§ 270b(a) and 270b (b). The condition in the bond was:
 
 
 3
 "(3) No suit or action shall be commenced hereunder by any claimant,
 
 
 4
 (a) Unless claimant shall have given written notice to any two of the following: The Principal, the Obligee, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. * * *
 
 
 5
 (b) After the expiration of one (1) year following the date on which Principal ceased work on said subcontract."
 
 
 6
 Promptly after June 1 Dole contacted General Electric Supply Company, a division of General Electric Company, at its outlet at 320 Pine Street, Burlington, Vermont, and ordered from it all the electrical items needed to perform its subcontract with Lewis. On June 6 and June 12, 1961, purchase orders for this material as required by the plans and specifications of the Lewis subcontract were placed. The materials were to be shipped when needed. There was some oral testimony to the effect that prior to completion of its work Dole may have purchased items from General Electric Supply Company in addition to the items contained in the purchase orders of June 6 and June 12, 1961. However, the only invoices introduced, except one for a "rigid conduit" of August 23, 1962, which has no bearing upon this case, and except the one of December 10, 1962 discussed in the text hereafter, were invoices of items contained in the purchase orders of June 6 and June 12.[2]
 
 
 7
 Dole entered upon the performance of its subcontract with Lewis; all the materials required therefor that General Electric Supply Company at Burlington was to supply to Dole were shipped and delivered to Dole at the job site in North Concord between April 16, 1962 and August 3, 1962, both dates inclusive. Dole completed all work required under its subcontract with Lewis in the prosecution of the work provided for in the prime contractor's contract with the Government on August 18, 1962, and, on August 27, 1962, submitted its statement to Lewis requisitioning the final unpaid balance due it from Lewis.
 
 
 8
 No further bill was ever sent by Dole to Lewis, but Dole ordered from General Electric Supply Company at 840 Hammond St., Bangor, Maine, two light fixtures to be shipped by the manufacturer, Miller Co. of Meriden, Conn., to Dole at Bangor, which were to replace two fixtures which had been broken after they were originally installed at North Concord. On December 10, 1962 these two fixtures were shipped by Miller to Bangor and thereafter were installed by Dole to replace the two broken fixtures.
 
 
 9
 These two fixtures were purchased on a separate purchase order, through a different General Electric Supply Company outlet than handled the original orders, were in addition to the original fixtures which had been furnished under the original purchase orders, cost Dole $26.70, $6.96 more than the two identical items cost on the original purchase order, were shipped 128 days after the last furnishing of the materials to Dole for the prosecution of the work provided for in its subcontract with Lewis and covered by the original purchase orders of June 1961, and 104 days after Dole submitted its final requisition to Lewis. Dole, who installed them as a favor to the Commanding Officer of the military unit that had been moved into the completed facility at North Concord, never billed Lewis, or the United States, for them.
 
 
 10
 On January 17, 1963, General Electric first notified Lewis[3] that Dole had not paid for the materials furnished by it to Dole in the prosecution of the work provided for in Dole's subcontract with Lewis. This notice was given more than 90 days, indeed 167 days, after General Electric's final shipment of material of August 3 to the job site, and 143 days after Dole submitted its final requisition to Lewis — but within 90 days of the order for and the shipment of the two replacement fixtures.
 
 
 11
 General Electric Company not having received full payment from Dole, and Lewis and its surety Aetna Insurance Company having denied any liability for Dole's debt, General Electric on September 25, 1963, as the use plaintiff, filed its action pursuant to the Miller Act, 40 U.S.C. § 270a, (b), in the United States District Court for the District of Vermont against Lewis and Aetna alleging that it had furnished materials to Dole for use on the North Concord project for which it had not been paid, that it had timely notified the prime contractor Lewis thereof, and that it was entitled to a judgment against the defendants of $9,066.69. The defendants answered on November 1, and also moved for leave to make Aetna Casualty and Surety Company a party to the action, attaching to its motion a third-party complaint against Aetna Casualty. This third-party complaint was served on January 20, 1964 and was answered by the third-party defendant on February 6, 1964. Dole itself, the purchaser of the material that had not been paid for, was never made a party.
 
 
 12
 The district court tried the case without a jury, and awarded judgment of $6,676.75 to the use-plaintiff against the third-party defendant. From this judgment order and the denial of a motion to set aside the judgment, the third-party defendant appeals. We reverse the judgment below and remand with directions that judgment be entered for the third-party defendant-appellant, Aetna Casualty and Surety Company. Although no determination was made below with reference to the alleged liability of the prime contractor Lewis or its surety, Aetna Insurance Company, and those two original defendants are not appellants here, we perceive no good reason for not disposing of the case as to them also, and direct that, after remand, if motions for judgment are filed by them in the district court, judgment be entered against the use-plaintiff and in favor of them.
 
 
 13
 The Miller Act permits a supplier or materialman who has "furnished * * * material in the prosecution of the work provided for" in a government contract, but who has no contractual relationship with the prime contractor, to sue on the prime contractor's bond for sums owed to him by a subcontractor if the written notice provided for in Section 2 of the Act, 40 U.S.C. § 270b(a), is given to the prime contractor "within ninety days from the date [when the supplier or materialman] furnished or supplied the last of the material."
 
 
 14
 The timely giving of the required notice is a condition precedent to the successful maintenance of the suit. The subcontractor's bond quoted above also requires that notice be given within 90 days of the supplier's last furnishing of material for the project, and the timely giving of such a notice is a condition precedent to a recovery upon that bond.
 
 
 15
 The only furnishing of material within 90 days prior to the January 17 notice was the December 10th shipment of the two light fixtures Dole wished to install at its own expense as a favor to the Commanding Officer to replace broken ones that had been originally installed at the project. Though the district court found that the two fixtures were furnished to Dole to replace fixtures broken after being originally installed at the North Concord Radar Facilities, it also found that General Electric Supply Company when it furnished the two fixtures on December 10, 1962 reasonably and in good faith assumed that they were used for the completion of Dole's contract on that North Concord radar job. Because of this assumption by General Electric Supply Company it held that the January 17, 1963 notice was timely, and that the December 10 purchase and the January 17 notice made Dole's surety liable to General Electric for all the material and supplies General Electric had furnished Dole on the North Concord job that had not been paid for.
 
 
 16
 As we have noted above, these two fixtures were furnished substantially more than 90 days after August 3 when Dole had completed all of its original installations at North Concord and substantially more than 90 days after August 27 when it requisitioned its final payment from Lewis on the contract price its due for having completed its contract.
 
 
 17
 There is nothing in the record to even hint at a suggestion that General Electric, if it had any thought of having an ultimate recourse to the Miller Act, had any grounds whatever for believing that it could safely permit the months of September, October, and November to pass without notifying the prime contractor or its surety that Dole had not paid it. Also, of course, there is nothing in the record to indicate that General Electric could have had a reasonable belief that later on, perchance in December, Dole would place an order requesting General Electric to supply from another manufacturer items to replace items General Electric had originally furnished months before which had been broken in the meantime; and that this handy order would relate back and make the prime contractor liable for several thousands of dollars worth of material General Electric had furnished to a defaulting subcontractor more than 90 days earlier in the year.
 
 
 18
 In reaching its result the court below relied upon United States for Use and Benefit of Westinghouse Elec. Supply Co. v. Endebrock-White Co., 275 F.2d 57 (4 Cir. 1960). In that case the use-plaintiff Westinghouse had an original confirmed order to furnish the materials needed by the prime contractor Endebrock-White's subcontractor in the prosecution of a government job. The last of those materials was delivered on October 16, 1957, and the statutory ninety day notice period following this delivery expired January 14, 1958. No notice that Westinghouse sought to recover for the unpaid purchase price of any materials so furnished was received by Endebrock-White Co. until the ninety-second day, January 16, when it was notified that Westinghouse claimed $3,962.51. However, the use-plaintiff received an order from the subcontractor for bushings costing $2.11 which it delivered on December 31, 1957, 76 days after the last of the originally ordered materials was delivered. This purchase order indicated that it was intended for the Endebrock-White project. The bushings were actually used elsewhere. Thereafter a second notice was sent to Endebrock-White on February 18 claiming the unpaid sum of $3,962.51 set forth in the late-filed January notice, plus $2.11. The Fourth Circuit held that the supplier had a reasonable belief that the bushings were intended for the Miller Act project and this "reasonable belief" was sufficient to identify the supplier as a "person who has furnished * * * material in the prosecution of the work provided for" in the subcontractor's contract with the prime contractor, and therefore covered by the statute. The court then held that the statutory ninety day notice period began to run from the delivery of the bushings, rather than from the delivery of the last of the material that was actually used on the project, and further concluded that this latter notice was sufficient to impress liability upon the prime contractor for all the materials furnished to the defaulting subcontractor prior to October 16.
 
 
 19
 As the rationale for this result the Fourth Circuit adopted as the "correct rule" the statement of District Judge Gilliam in United States for Use of Color Craft Corporation v. Dickstein, 157 F. Supp. 126, 132 (E.D.N.C.1957):
 
 
 20
 "The Miller Act is highly remedial in character and is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those who furnish labor or materials for public works. Glassell-Taylor Co. v. Magnolia Petroleum Co., 5 Cir., 153 F.2d 527, and cases cited therein. In accord with this policy and in view of the reasons discussed above, it is the opinion of this Court that as against the prime contractor a materialman may recover under the Miller Act where he has sold and delivered material to the subcontractor in good faith and under the reasonable belief that it was intended for ultimate use under the prime contract. Neither delivery of the material to the prime contract job site nor actual incorporation of the material into the work is required. But here the evidence shows that the paint was actually incorporated into the work. Use plaintiff's right to recover seems plain and clear to me." (Italics supplied by Fourth Circuit, 275 F.2d 57, 60.)
 
 
 21
 The statement the Fourth Circuit italicized was but dictum in Color Craft, for as Judge Gilliam pointed out, the paint involved in the disputed account there was actually incorporated into the work.
 
 
 22
 We agree with the overwhelming weight of judicial authority that the statute's provision[4] relative to how and in what form timely notice reaches the prime contractor should be liberally construed, but we adhere to the belief that the notice, however conveyed, must reach the party sought to be held by the notice within the statutory time for its receipt. While protecting the legitimate interest of the supplier, we also should recognize the distinction pointed out by the United States Supreme Court in Fleisher Engineering v. United States for Use of Hallenbeck, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12 (1940). There the Court affirmed the opinion of the Second Circuit, 107 F. 2d 925 (1939) wherein our court held that a timely notice satisfied the statute even though the notice did not conform to the method of mailing set forth in Section 270b, and wherein we stated, at 928, that "A statute like the present, giving a remedy on a payment bond to laborers and materialmen, is remedial and under the authorities should be liberally construed." The Supreme Court said:
 
 
 23
 In giving the statute a reasonable construction in order to effect its remedial purpose, we think that a distinction should be drawn between the provision explicitly stating the condition precedent to the right to sue and the provision as to the manner of serving notice. The structure of the statute indicates the distinction. The proviso, which defines the condition precedent to suit, states that the material-man or laborer "shall have a right of action upon the said payment bond upon giving written notice to said contractor" within ninety days from the date of final performance. The condition as thus expressed was fully met. Then the statute goes on to provide for the mode of service of the notice. "Such notice shall be served by mailing the same by registered mail, postage prepaid," or "in any manner" in which the United States marshal "is authorized by law to serve summons." We think that the purpose of this provision as to manner of service was to assure receipt of the notice, not to make the described method mandatory so as to deny right of suit when the required written notice within the specified time had actually been given and received. In the face of such receipt, the reason for a particular mode of service fails. It is not reasonable to suppose that Congress intended to insist upon an idle form. (Italics supplied.) 311 U.S. at 19, 61 S.Ct. at 83.
 
 
 24
 Having in mind this clear explication of the purpose behind the ninety-day notice requirement, we find we are not in accord with the expansion made by the district court below upon the expansion made by the Fourth Circuit in Endebrock-White of the dictum in Color Craft. It is not necessary for us at this time to adopt or to reject the Color Craft position that recovery on a prime contractor's bond may be had by a supplier who has furnished material to a subcontractor while the subcontractor is doing work on a Miller Act project and who has done so in good faith and under a reasonable belief that the material so furnished is to be used on that job even if the subcontractor used the material elsewhere. Also, it is not necessary for us to adopt or reject the expansion upon Color Craft made by the Fourth Circuit in Endebrock-White, but, if it were necessary, we would not, in all probability, follow it. We do, however, expressly disapprove the still further expansion made by the court below, where, relying upon Endebrock-White, it was held that a supplier's "good faith and reasonable belief" that an item it was furnishing more than 90 days (in Endebrock-White the delivery was on the 76th day) from its last previous shipment had the effect of making the prime contractor liable for materials furnished the subcontractor months earlier during the actual prosecution of the work.
 
 
 25
 To be sure, the Miller Act is generally designed to benefit the supplier so that he will get his due even if the subcontractor with whom he is in contractual privity defaults. To secure the protection of the act the supplier has only to give timely notice to the prime contractor and he will be covered by the prime contractor's statutory bond. However, the proviso in the statute requiring that notice be given to the prime contractor within ninety days is for the benefit of the prime contractor and not for the benefit of the supplier. As we said in United States for Use and Benefit of Edwards v. Thompson Construction Corp., 273 F.2d 873, 875-876 (1959), cert. denied, 362 U.S. 951, 80 S.Ct. 864, 4 L.Ed.2d 869 (1960):
 
 
 26
 The reason why the Miller Act conditions the rights of a person having "no contractual relationship express or implied with the contractor furnishing said payment bond" upon the giving of proper notice within ninety days from the date "on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made," is readily understandable. It was assumed that such third parties will first endeavor to collect from the subcontractor with whom they have a contract relation. During a reasonable period, while these efforts are going forward, the contractor withholds the payments due the subcontractor. If he receives a third party claim within ninety days, he reserves appropriate amounts from monies otherwise owing to the subcontractor. But, once ninety days have elapsed without such notice, he is free to pay the subcontractor for the latter's work without risk of liability under his bond to laborers and materialmen whose sole contractual relation is with the subcontractor. A statute which gave rights on the contractor's bond to laborers and materialmen having no contractual relations with him but which did not require timely and adequate notice to him, would lead either to double payments or to interminable delay in settlements between contractors and subcontractors.
 
 
 27
 The Second Circuit, though in the main interpreting Miller Act fact-situations as favorably as permissibly possible to use-plaintiffs, has always recognized the importance of preserving the 90 day notice period and of not permitting use-plaintiffs to extend it beyond that number of days after the furnishing of the last materials to the subcontractor which the latter was to use in the prosecution of the work he had contracted with his prime contractor that he was to perform. See United States for Use and Benefit of Edwards v. Peter Reiss Construction Co., 273 F.2d 880, 78 A.L.R.2d 409 (2 Cir. 1959), cert. denied, 362 U.S. 951, 80 S.Ct. 864, 4 L.Ed.2d 869 (1960) (where, as here, ninety days had elapsed without any notice having been given); United States for Use and Benefit of Edwards v. Thompson Construction Corp., supra, and cases therein commented upon, United States for Use and Benefit of P. A. Bourquin & Co. v. Chester Construction Co., 104 F.2d 648 (2 Cir. 1939); United States for Use and Benefit of J. A. Edwards & Co. v. Bregman Construction Corp., 172 F.Supp. 517 (E.D.N.Y.1959). For cases from other jurisdictions see note following United States for Use and Benefit of Edwards v. Peter Reiss Construction Co., 78 A.L.R.2d 409, 412 ff. And see United States for Use and Benefit of Miller & Bentley Equipment Company, Inc. v. Kelley, 327 F.2d 590 (9 Cir. 1964).
 
 
 28
 We hold that the requirement that the notice must be given within the ninety-day period is mandatory and is a strict condition precedent to the existence of any right of action upon the prime contractor's bond.
 
 
 29
 We therefore hold that the delivery of the two fixtures on December 10, 1962 which were not supplied or furnished as a part of the original contract cannot revive a Miller Act liability extinguished by the expired ninety-day period, which period had expired, as we view the facts, on November 1, 1962, and, even under the most favorable construction for plaintiff, had expired on November 25, 1962. Moreover, even if, contrary to the district court's finding, the deliveries from April 16 to August 3 had not all been furnished upon the integrated orders of June 6 and June 12, 1961, but some of them had been furnished on invoices of an "over the counter" nature, there was a period of more than ninety days from the date of the last August invoice until the invoice of December 10, see United States for Use and Benefit of Edwards v. Peter Reiss Construction Co., supra.
 
 
 30
 Though the use-plaintiff may not recover its unpaid account with Dole from the appellant because of its failure to give a timely Miller Act notice, and recovery from appellant is dependent upon the substantiation, first, of a right to recover from Lewis, it is probably unnecessary to point out that these proceedings do not in any way affect the direct liability of Dole to General Electric.
 
 
 31
 Judgment reversed and case remanded.
 
 
 
 Notes:
 
 
 [1]
 The provisions of the Miller Act pertinent to decision of this case are:
 § 270a. Bonds of contractors for public buildings or works; waiver of bonds covering contract performed in foreign country
 (a) Before any contract, exceeding $2,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as "contractor":
 (1) A performance bond with a surety or sureties satisfactory to the officer awarding such contract, and in such amount as he shall deem adequate, for the protection of the United States.
 (2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person. Whenever the total amount payable by the terms of the contract shall be not more than $1,000,000 the said payment bond shall be in a sum of one-half the total amount payable by the terms of the contract.
 * * * * *
 § 270b. Same; rights of persons furnishing labor or material
 (a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: Provided, however, That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.
 * * * * *
 (b) Every suit instituted under this section shall be brought in the name of the United Staes for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him. The United States shall not be liable for the payment of any costs or expenses of any such suit.
 
 
 [2]
 The court found, on all this evidence, the oral testimony, the purchase orders, and the invoices, that:
 
 
 [3]
 A contract existed between General Electric Supply Company and Dole for deliveries of supplies for the North Concord job under the terms of the purchase orders dated June 6 and June 12, 1961
 
 
 [3]
 There is no dispute over whether this notice complied with the notice technicalities set forth in the Miller Act. Of course the decisions are legion that these technical provisions, which we have not quoted in footnote 1 above, do not bar a recovery if in fact a timely notice of some sort is given. The issue in this case is only as to whether the notice given on January 17 was timely
 
 
 [4]
 The language of this provision is found in the last sentence in 40 U.S.C. § 270b (a), and reads as follows:
 Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons.