UNITED STATES of America for the Use and Benefit of RAYMOND A. BERGEN, INC., Plaintiff,

v.

DeMATTEO CONSTRUCTION COMPANY, Travelers Insurance Company, Defendants.

No. Civil B76–395.

United States District Court, D. Connecticut.

Jan. 22, 1979.

Edward F. Kunin, Bridgeport, Conn., for plaintiff.

Angelo P. Costa, Bridgeport, Conn., for Bridgeport Pipe Engineering Co., Inc.

Donald G. Walsh, M. Mitchell Morse, New Haven, Conn., for defendants.

## MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

DALY, District Judge.

I

This is a subcontractor's action under the Miller Act, 40 U.S.C. § 270a and § 270b, to recover on the prime contractor's bond for materials furnished for use in the construction of a United States postal facility. Arising in the context of cross motions for summary judgment, the critical issue is whether the use plaintiff provided the prime contractor with notice of action "within ninety days from the date on which such person . . . furnished or supplied the last of the material for which such claim is made," as required by the Act. 40 U.S.C. § 270b(a).[1]

---

1. 40 U.S.C. § 270b(a) provides in pertinent part:

Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expira-tion of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final

## II

The following facts are undisputed.[2] The United States employed the DeMatteo Construction Company (DeMatteo) as the prime contractor in the construction of a preferential mail center in Hartford, Connecticut. DeMatteo, with Travelers Insurance Company as surety, executed the requisite Miller Act bond. DeMatteo subcontracted to the Bridgeport Pipe Engineering Company (Bridgeport Pipe) the job of furnishing and installing the plumbing and air conditioning systems. Bridgeport Pipe, in turn, engaged Raymond A. Bergen, Inc. (Bergen), the use plaintiff, to provide louvers and dampers.[3] Bergen employed the Ruskin Manufacturing Company (Ruskin) to manufacture based upon particular specifications the louvers and dampers in sections for assemblage at the construction site and to provide special clips, necessary to fasten the sections to each other and the building.

The sections were delivered to the Hartford job site on three occasions; the shipment involving the last section of louvers and dampers arrived on January 12, 1976. Subsequent to the final delivery, at the time of installation, Bridgeport Pipe discovered that an insufficient number of clips had been included in the last delivery and contacted Bergen about the deficiency.[4] Bergen notified Ruskin who proceeded to send the clips to Bridgeport Pipe on February 27, 1976 and on March 4, Bridgeport Pipe received fifty additional clips. Accord-

ing to the undisputed affidavit of Ruskin's vice president, the omission of the clips in the January 12 delivery was an oversight. Bergen did not charge Bridgeport Pipe for these clips which were valued at $100.

On May 28, 1976, Bergen notified DeMatteo that Bridgeport Pipe had failed to pay $25,550. due for the materials furnished to the Hartford project. DeMatteo and its surety disclaimed liability under the Miller Act on the grounds that plaintiff had failed to comply with the ninety-day notice requirement of the Act. Defendants contend that the notice period had expired ninety days after January 12, the delivery date of the final shipment of louvers and dampers. Plaintiff maintains that notice was timely since the delivery date of the additional clips properly commenced the notice period. Both parties have moved for summary judgment.

## III

The question for this Court's determination is whether the notice of May 28 which was within ninety days after the delivery of the additional clips but not within ninety days of the final shipment of louvers and dampers complies with the requirement of § 270b(a) and permits Bergen to recover for all materials furnished for use at the Hartford job site. In cases of this nature, the applicable legal test employed in determining when the notice period commences is "whether . . . the material is sup-

execution and judgment for the sum or sums justly due him: *Provided, however,* that any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. . .

2. The defendants originally opposed plaintiff's motion for summary judgment, claiming that material issues of fact remained in dispute.

The defendant now retracts that position and also moves for summary judgment, agreeing that plaintiff's brief of July 5 contains an accurate recitation of the facts. The facts recited herein are derived from those agreed upon and those contained in uncontested affidavits.

3. On November 4, 1975 Bridgeport Pipe approved Bergen's quotation of $27,900.00 with a discounting factor for the package of supplying the specific louvers and dampers requested.

4. Defendant's counsel also asserts that the clips were delivered in a sealed box which remained unopened at the construction site until the time of installation. The plaintiff does not appear to dispute this contention, and this Court has considered it as true in rendering this decision.

plied as a 'part of the original contract,' or for the 'purpose of correcting defects, or making repairs.'" *U. S. for the Use of Noland Co. v. C. B. Andrews,* 406 F.2d 790 (4th Cir. 1969); *U. S. for the Use of State Electrical Supply Co. v. Hesselden Construction Co.,* 404 F.2d 774 (10th Cir. 1968).

The Second Circuit applied this test in *U. S. for the Use of G. E. Co. v. H. I. Lewis Construction Co. Inc.,* 375 F.2d 194 (2d Cir. 1967) and held that the delivery of two fixtures which were clearly replacements and "which were not supplied or furnished as part of the original contract cannot revive Miller Act liability extinguished by the expired ninety-day period . . ." *Id.* at 201. The Court stated that although the Act is remedial in nature and therefore should be construed broadly to permit subcontractors to recover, the ninety-day notice provision must be preserved as a strict condition precedent to recovery in order to protect the prime contractor against double payments and to prevent delay in settlements between contractors and subcontractors. *Id.; See also U. S. for the Use of Edwards v. Thompson Construction Corp.,* 273 F.2d 873, 875-6 (2d Cir. 1959), cert. denied, 362 U.S. 951, 80 S.Ct. 864, 4 L.Ed.2d 869 (1960).

■ Defendants, although admitting that the factual situation here may be dissimilar to *Lewis* and the "replacement parts" line of cases, contend that the policy considerations govern nevertheless and urge this Court to extend the rationale in those cases to deny Bergen recovery. Defendants maintain that unless the rationale in *Lewis* is adopted here, a prime contractor would remain liable on an order delivered in a sealed but incomplete fashion until ninety days after the deficiency was discovered and remedied which could occur years after delivery of the alleged final shipment and after the prime contractor paid the defaulting subcontractor.[5] Defendants contend that if the ninety-day notice period is permitted to run from the delivery date of the additional clips, DeMatteo would be denied the protection against double payment which the Second Circuit stated the notice provision was intended to provide.[6] *Lewis, supra.*

## IV

■ First, this Court focuses upon whether the facts before it merit a determination that the clips were or were not replacement parts to permit summary judgment. It is well settled that the fundamental precondition of summary judgment is that no genuine issue of material fact exists. *See Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317 (2d Cir. 1975). Either by uncontested affidavit or by agreement between the parties, it is established in this case that the shipment of January 12 did not include the clips delivered on March 4, and that the additional clips were part of the original contractual obligation and necessary to install the louver and damper sections.

A comparison with the *Lewis* case highlights the factual distinction between re-

**5.** It should be noted that payment to a defaulting subcontractor is not a defense available to a prime contractor who otherwise is liable on the bond. *See e. g. U. S. A. for Use of Noland Co. v. C. B. Andrews,* 406 F.2d 790 (4th Cir. 1969).

**6.** Defendants also argue that courts, by adopting plaintiff's position, would enable use plaintiff-subcontractors intentionally to omit merchandise ordered and deliver it at a later date in order to extend the period in which the prime contractor remains liable on the bond. However, defendants admit that "there is no indication of such circumstances in the present case." (Defendant's Brief at 5)

This Court further notes that as a matter of common business sense it appears likely that the primary goal of a subcontractor who has paid its supplier and who is seeking recovery on a prime contractor's bond is speedy payment under the Miller Act. Moreover, this Court will not construe a statute unreasonably for the purpose of protecting prime contractors against a hypothetical situation in which a subcontractor intentionally acts in a fraudulent manner.

Defendants also argue that the prime contractor who seeks to avoid extended liability by obtaining a regular inventory of all merchandise received would be paving the way for theft and loss of goods since the shipments would then be unsealed from the time of arrival until the date of installation. It is this Court's view that precautions could be adopted to protect the materials at the job site should the prime contractor choose to act in this manner.

placement parts and the parts involved herein.[7] In *Lewis,* the defaulting subcontractor purchased the fixtures from the use plaintiff General Electric Co. to replace ones previously installed and broken. It ordered them through a separate purchase order, from a different outlet than previously employed and at an additional cost. In the present case, the order for fifty clips was to complete an incomplete shipment. It was placed with Bergen who, in turn, contacted Ruskin, the same supplier of the entire louver and damper system. Further, Bergen supplied the clips at no additional cost, a factor which supports this Court's finding that they were furnished under the original contract pursuant to which Bergen had already sent invoices to Bridgeport Pipe.

This case in analogous to *U. S. for the Use of G. E. v. G. I. Johnson & Son, Inc.,* 310 F.2d 899 (8th Cir. 1962) in which the court held that timely notice was given within ninety days from the date two defective bus ducts were redelivered to the site after they were repaired at no additional cost. In fact, the clips in the present case are an even clearer example of parts which are not replacements than the fixtures in *Johnson.* While there, the fixtures had been delivered previously, found defective before installation, and returned, here, the clips had never arrived.

This Court finds sufficiently dispositive facts which are undisputed to determine that the clips are not replacement parts within the judicially derived meaning of that term and that, therefore, this case is ripe for summary judgment.

## V

The pivotal question remaining is whether the policy considerations advanced by the defendants justify bringing this case within the narrow rule of *Lewis* and whether such an extension would comport with the statutory language of 270b(a). Despite defendant's assertions to the contrary, it is this Court's view that to extend the rationale in *Lewis* to cases which do not involve replacement parts specifically not only would be inconsistent with the express statutory language of § 270b(a) but also would sharply and improperly curtail the remedial nature of the legislation. Consonant with the wording of the statute, the rule as presently applied offers the prime contractor protection against double payment in situations where it should reasonably be expected and where it otherwise improperly would be denied.

For instance, in *Lewis,* the prime contractor had every reason to believe the allegedly final shipment of fixtures was complete since they had been delivered and actually installed. Therefore, after the ninety days had run from the delivery date, the prime contractor had a reasonable expectation that he could pay the subcontractor without fear of double liability from the materialman. Accordingly, the Court refused to extend the notice period and denied recovery.

In *Johnson,* where the Court permitted recovery, the prime contractor had a less reasonable expectation that the allegedly last shipment was final since the fixtures had not been installed. And even though in that case a prime contractor who had inspected the delivery could have concluded that the order was complete, assuming the defects were not evident, the court implicitly found that, because installation had not been achieved, the prime contractor did not have a reasonable expectation of protection

7. This case is distinguishable equally from *U. S. v. Hesseldon Construction Co.,* 404 F.2d 774 (10th Cir. 1968) in which the court refused to toll the notice statute because replacement parts were involved. In *Hesseldon,* orders requiring three pedestals were filled and invoices sent. Subsequently, a fourth pedestal with an accompanying invoice was sent to make the system perform properly although it had not been required in the original plans and specifications. The court held that "[h]aving determined that the invoices of February 22, and March 5, concerned materials used for repair or correction and not for the accomplishment of the original contract, their delivery could not serve to toll the running of the ninety day period." *Id.* at 777.

against double liability if he paid the subcontractor after ninety days from the delivery of the defective parts.[8]

The present case offers an even more compelling occasion to apply the *Johnson* rationale. Here, the normal indicia of a completed delivery were absent. The clips never arrived and installation never occurred. Therefore, the prime contractor who either witnessed the construction or checked the shipment upon delivery could not have been under the impression that the January 12 shipment was complete and that the ninety day notice period had commenced on that date.

Moreover, defendants urge on this Court a construction of the notice provision which is inconsistent with the express wording of the statute, and which as a result would place Bergen and similarly situated subcontractors in an untenable position. Had Bergen given timely notice from the date of the last shipment but before the clips were delivered, DeMatteo legitimately could have argued that Bergen would not yet have had an enforceable claim under the express language of § 270b(a).[9] That provision clearly states that the ninety-day notice period begins to run from the date the *last* of the materials were furnished. Defendants also, of course, urge this Court to reject as untimely the notice given in the present case which was ninety days from the delivery date of the clips even though the clips constituted in a literal sense the last shipment pursuant to the contract between Bergen and Bridgeport Pipe.

Thus, the only proper time for giving notice under defendants' theory is within the period in which notice would be timely for both the January 12 shipment and that of March 4. This construction obligates the subcontractor *who seeks to recovery under* the Miller Act, in effect, to circumnavigate his way through two notice periods to find the time in which they overlap. Assuming that a time common to both periods exists, which is not always the case, this interpretation results in a severe limitation of the ninety-day period to which the plaintiff expressly is entitled under the Act. Based upon the statutory language, it is difficult for this Court to conclude that the authors of this remedial legislation could have intended to constrict in this fashion the ability of subcontractors to pursue their rights against the bond.

For the reasons stated above, this Court finds that the use plaintiff has satisfied the ninety-day notice requirement set forth in § 270b(a) of the Miller Act, and is entitled to recover the price of the entire contract. *U. S. A. for the Use of Air Stream Products Co., Inc. v. Essential Construction Co., Inc.*, 363 F.Supp. 681 (S.D.N.Y.1973). Accordingly, summary judgment in favor of the use plaintiff is hereby entered against the defendants DeMatteo and Travelers Insurance Company and the defendant's motion for summary judgment is hereby denied. Use plaintiff is entitled to recover $25,550. and interest computed from the date of March 4, 1976 at six percent per annum.

---

8. The court in *Johnson* pointed out that the electrical system could not have been completed without the repaired ducts and held that:

> until such time as they [materials] were "furnished" in such condition as to meet the engineering requirements and be ready and fit for installation as a part of the system, no enforceable claim did or could arise. . . .

An enforceable claim therefor arose for the first time when they were "furnished" in useable condition, subsequent to their necessary alteration, and regardless of the fact that such reshipment was on a "no charge" basis. 310 F.2d at 903

9. *Id.* at 899.