**UNITED STATES of America, for the Use of WEST PACIFIC SALES CO., Inc., a corporation, Plaintiff,**

v.

**HARDER INDUSTRIAL CONTRACTORS, INC., a corporation, and General Insurance Company of America, a corporation, Defendants.**

Civ. No. 63–51.

United States District Court
D. Oregon.

Nov. 27, 1963.

Paul Meyer, of Kobin & Meyer, Portland, Or., for plaintiff.

James R. Ellis, of Bobbitt & Ellis, Portland, Or., for defendants.

KILKENNY, District Judge.

West Pacific prosecutes this action against defendants on two theories:

(1) That the payment bond, under consideration, was posted pursuant to the provisions of the Miller Act, 40 U.S.C. § 270a et seq. and that it comes within the scope of the protection provided by the Act and the bond.

(2) That the bond is one authorized by federal law and, even though the Miller Act is not applicable, the plaintiff comes within the scope of the bond's protection, with jurisdiction existing under 28 U.S.C. § 1352.

A third theory of recovery, advanced by said plaintiff, was decided adversely to it at the close of the trial.

West Pacific and Harder are Oregon corporations. General Insurance is a Washington corporation engaged in a general surety business in Oregon and other states.

Effective as of April 24, 1959, the United States of America, acting through the United States Atomic Energy Commission, hereinafter called "Commission", and Henry J. Kaiser (Kaiser Engineers Division), a Nevada corporation, herein called "Contractor" entered into a "Cost-Plus-A-Fixed-Fee" construction contract for the erection of certain facilities in or about Richland, Washington. In November, 1960, Contractor issued to defendant, Harder Industrial, its "Notice to Bidders". Harder submitted a bid, pursuant to said invitation. The bid was accepted. In December, Harder, and Contractor signed a lump-sum Contract for the performance of certain work included in its agreement with the Commission. In compliance with the requirements of the Contract, Harder, as principal, and General, as surety, posted the payment bond now under scrutiny.

M&N Sheet Metal Works, Inc. agreed with Harder to furnish certain labor and materials required in the prosecution of the Contract. Between June, 1961, and August, 1962, West Pacific furnished said materials to M&N Sheet, the agreed

value of such materials, so supplied and used, in the performance of said contract, being $2,003.34, no part of which has been paid.

In the administration of the project in question, the Atomic Energy Commission was acting under and pursuant to rules and regulations promulgated by the Commission and bond was posted pursuant to Chapter 9114–024 of said regulations.[1]

The bond, issued by General, named the United States of America and Henry J. Kaiser Company as joint obligees and was for a penal sum in excess of $500,-000.00.

## MILLER ACT

Defendants, for the following reasons, insist that the bond posted in this case was not a Miller Act bond.

(1) The Miller Act requires a bond of the prime contractor, rather than a subcontractor, such as Harder Industrial, and

(2) The United States must be the sole obligee under a Miller Act bond.

■ (1) The exhibits in evidence conclusively establish that the bond under study is, for all intents and purposes, identical with standard form 25A, which is conceded to be U. S. Standard Form of a Miller Act bond, a form adopted in 41 U.S.C. § 54.16, Appendix. The only difference between this bond and the form, is that Kaiser Engineers Division of Henry J. Kaiser Co. is a joint obligee with the United States on the bond here in question. The cases cited by defendants, United States v. Seaboard Surety Company (N.D.Tex.1961), 201 F.Supp. 630; United States for the Use of General Accident Fire & Life Assurance Corp.,

Ltd. v. Maguire Homes, Inc. (D.C.Mass. 1959), 186 F.Supp. 659; and United States to Use of Acme Furnace Fitting Co. v. Fort George G. Meade Defense Housing Corp. (D.C.Md.1960), 186 F. Supp. 639, do not support defendants' position. I can think of no valid reason why the addition of an obligee should destroy the force and effect of an otherwise valid Miller Act bond. If necessary, the name of the other obligee could well be ignored and treated as mere surplusage.

(2) The main trust of the defendants' argument on this theory is that the Miller Act requires a bond of the prime contractor rather than the subcontractor.

The language of the Miller Act, in itself, does not dictate such a conclusion. On the other hand, it has been held that the Act should be liberally construed in favor of those persons who supply material toward the prosecution of the work. United States for Benefit and on Behalf of Sherman v. Carter et al., 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957).

■ The primary purpose of the Miller Act is to protect those who furnish labor or supply material for use in the construction of public buildings or public works of the United States and a liberal construction should be given to effectuate that purpose. MacEvoy Co. v. United States, for Use and Benefit of Calvin Tomkins Co., 322 U.S. 102, 64 S. Ct. 890, 88 L.Ed. 1163; T. F. Scholes, Inc. v. United States for Use of H. W. Moore Equipment Co., 295 F.2d 366 (10 Cir. 1961). Defendants' argument that MacEvoy prohibits a recovery where a materialman furnishes the material to a subcontractor is not sound. MacEvoy

1. "024 PAYMENTS BONDS
\* \* \* \* \*

"b. *Lump Sum or Unit Price Construction Contracts and Subcontracts.* A payment bond shall be furnished by the proposed contractor before any prime construction contract is entered into on a lump sum or a unit price basis where the amount of such contract is in excess of $2,000.00. Payment bonds should be required for all lump sum and unit price construction subcontracts in excess of $2,-000.00 where the subcontract is under a cost-type prime contract (or under a cost-type subcontract under a cost-type prime contract), unless the Contracting Officer determines that the interests of the Government and of persons furnishing labor and materials for the contract work are otherwise adequately protected.

treats of one materialman furnishing materials to another materialman, rather than to a subcontractor, such as use plaintiff in this case.

▮ To be kept in mind is the fact that the Atomic Energy Commission has been a favored agency during most of its existence, even to the extent that the War Powers Act, 50 U.S.C.App. § 611, authorized the President to waive the requirements of the Miller Act in certain instances. This power was utilized by Executive Order No. 10210, dated February 2, 1951, 16 Fed.Reg. 1049, the applicability of which was extended to the Atomic Energy Commission, by Order No. 10216, dated February 23, 1951, 16 Fed.Reg. 1815. That Act was superseded, in part, by Public Law 85–804, Act Aug. 28, 1958, 72 Stat. 972, which provided, in part, that the requirements for bonds could not be waived. It seems rather clear that the Commission was treating Kaiser Engineers as its supervisory agent and that Harder was treated as a prime contractor in connection with the performance of the work outlined in its contract. I conclude that the bond was posted pursuant to the provisions of the Miller Act.

### BOND REQUIRED BY FEDERAL LAW

▮▮ The record shows that the Atomic Energy Commission required the posting of the bond under observation and that the United States was named as one of the parties to the document. Aside from the provisions of the Miller Act, the District Court has jurisdiction under 28 U.S.C. § 1352 [2], where the bond has been issued pursuant to Federal Law and, this is true regardless of the amount in controversy, or diversity of citizenship. United States for Use and Benefit of Victory Electric Corp. v. Maryland Casualty Co. (D.C.E.D.N.Y.1963), 215 F.Supp. 700.

That the Commission had power and authority to enter into the initial contract is beyond question. 42 U.S.C. § 2201(e).[3] Likewise, it is undisputed that the Commission had power to promulgate rules and regulations. 42 U.S.C. § 2201 (q).[4]

▮ When the Commission, by rule, provided for the bond under consideration, it was acting pursuant to authority duly granted by the Congress, and such rule had the force and effect of law. Public Utilities Commission of the State of California v. United States, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470; United States v. Short, 240 F.2d 292 (9 Cir. 1956); Atchison, Topeka & Santa Fe Railway v. Scarlett, 300 U.S. 471, 57 S.Ct. 541, 81 L.Ed. 748.

▮ Defendants contend that the regulation requiring a subcontractor to furnish a bond is in direct conflict with the Miller Act. Such claim is without substance. The Act creating the Atomic Energy Commission was passed by the Congress long subsequent to the enactment of the Miller Act. The broad powers granted to the Commission, of necessity, would encompass authority to require surety bonds on such projects as the Commission might deem advisable. If there is conflict between the Miller Act, and the Act creating the Atomic Energy Commission, the Miller Act must step aside to the extent of conflict.

In my view, the Court has jurisdiction on both theories.

---

**2.** The District Court shall have original jurisdiction concurrent with State Courts, of any action on a bond executed under any law of the United States.

**3.** 42 U.S.C. § 2201(e).
   "GENERAL DUTIES OF COMMISSION.
   "In the performance of its functions the Commission is authorized to—
   \*   \*   \*   \*   \*

"(e) acquire such material, property, equipment, and facilities, *establish or construct such buildings and facilities*, and modify such buildings and facilities from time to time, *as it may deem necessary*,
   \*   \*   \*".

**4.** 42 U.S.C. § 2201(q).
   "(q) make, promulgate, issue, rescind, and amend such rules and regulations as may be necessary to carry out the purposes of this chapter."

This Opinion shall stand as my findings, both of law and of fact. West Pacific is entitled to judgment in the sum of $2,003.34, together with interest thereon at the rate of 6% per annum from the 1st day of September, 1962, until paid, and for plaintiff's costs and disbursements. Plaintiff's request for a reasonable attorney fee is denied. This ruling, however, does not mean that the Court will not, under proper circumstances, permit the allowance of attorney fees in Miller Act cases.