**UNITED STATES for the Use of HILLS-DALE ROCK CO., INC., a California Corporation, Plaintiff-Appellee,**

**v.**

**CORTELYOU & COLE, INC., a corporation, United Pacific Insurance Group, a corporation, First Doe through Fifth Doe, inclusive, Defendant-Appellant.**

No. 75–3594.

United States Court of Appeals,
Ninth Circuit.

Aug. 31, 1978.

David M. Van Hoesen (argued), of Williams, Van Hoesen & Brigham, San Francisco, Cal., for defendant-appellant.

Hugh F. Connolly (argued), of Anderson, McMillian & Connolly, Burlingame, Cal., for plaintiff-appellee.

Before BROWNING and WRIGHT, Circuit Judges, and KUNZIG,* Judge.

KUNZIG, Judge:

This action, involving an attempt by Hillsdale Rock Co., Inc., plaintiff/appellee, (hereinafter Hillsdale or plaintiff) to recover $8,401.25 on a "payment bond" furnished jointly to the United States and Stanford University (Stanford) by the defendant/appellants (or appellants) Cortelyou & Cole, Inc. (hereinafter C&C) and United Pacific Insurance Group (hereinafter UPIG) for construction work performed in connection with a contract between Stanford and the Atomic Energy Commission (AEC), is before this court on appeal from a decision of the United States District Court for the Northern District of California which allowed the recovery sought by Hillsdale. Because we agree with the reasoning of the District Court that the bond in question here is, in fact, a Miller Act bond (essentially complying with all requirements of the Miller Act, 40 U.S.C. §§ 270a–270d (1970)) and that recovery under such a bond is justified, we affirm.

On April 26, 1962, Stanford entered into a written contract with the AEC. Pursuant to this contract, Stanford subcontracted with C&C for the accomplishment of certain construction work at the site of the Stanford Linear Accelerator Center. Although Stanford did none of the actual construction work itself, one of Stanford's obligations under its contract with the AEC was to develop procedures concerning subcontracts which would allow the actual construction work to be done. One of the procedures developed, with the coincident knowledge and approval of the United States, required that all bonds of subcontractors be written for the benefit of both Stanford and the United States. Accordingly, C&C and UPIG submitted a bond, on the form developed by Stanford, entitled "payment bond," in favor of Stanford and the United States, by which it guaranteed payment to "all persons supplying labor and material in the prosecution of the . . . contract."

C&C then contracted with Frank Bottari Co., Inc. (Bottari) which, in turn, contracted with Hillsdale. The exact contractual relationship of the parties has been agreed upon as follows:

The United States Atomic Energy Commission contracted with Stanford University which subcontracted with Cortelyou & Cole, Inc., which subcontracted with Frank Bottari Co., Inc. which purchased materials from, but did not pay, Hillsdale Rock Company, Inc., use-plaintiff herein.

Following completion of its work and the failure of Bottari to pay for this work, plaintiff mailed (though not by registered mail) a "Stop Notice and Notice to Withhold Funds" to Stanford, and a separate letter, explicitly outlining its problems with Bottari to UPIG, with a copy to C&C. When C&C and UPIG elected not to pay on the bond, Hillsdale filed the instant action in district court, seeking recovery of the money that it had not been paid by Bottari, alleging jurisdiction under the Miller Act.

The District Court for the Northern District of California (Wollenberg, J.) at first ordered the action dismissed for lack of jurisdiction because Hillsdale had alleged

* The Honorable Robert L. Kunzig, Judge, United States Court of Claims, sitting by designation.

insufficient facts concerning notice for the court to determine whether the bond in question, in fact, complied with the Miller Act, on which plaintiff had predicated jurisdiction. On a previous appeal, this court, without reaching the question of whether the bond in suit was actually a Miller Act bond, remanded for further proceedings and directed that plaintiff be allowed leave to amend its original complaint, suggesting that plaintiff could establish jurisdiction under 28 U.S.C. § 1352 (1970). In its amended complaint, Hillsdale alleged jurisdiction under both the Miller Act and 28 U.S.C. § 1352. However, plaintiff also alleged sufficient facts concerning notice to C&C and UPIG that the district court was able to determine that the bond in question was in fact a Miller Act bond and allowed recovery under that Act. Appellants now appeal that decision, and this court assumes jurisdiction pursuant to 28 U.S.C. § 1291 (1970).

Appellants' position before this court centers on two basic arguments: (1) That the bond furnished by C&C, as principal, and UPIG, as surety, was not a Miller Act bond; and (2) That if the bond was a Miller Act bond, the notice given by Hillsdale was insufficient to satisfy the notice requirements of the Miller Act.

Appellants, in arguing that C&C's "payment bond" was not a Miller Act bond, make four basic assertions. First, it is contended that since C&C was not a prime contractor for the United States, and since the Miller Act contemplated only bonds by prime contractors, the bond here is not a Miller Act bond, but a common law bond under which plaintiff, who had no direct contract with C&C, may not recover. This argument boils down to the simple fact that the bond was not given to the United States by the person contracting directly with the United States. Appellants' second argument relies on the fact that the "payment bond" given by C&C was not identical in form with Standard Form 25A, the U.S. Standard Form of a Miller Act bond. They point out that, in other cases where bonds given by parties not in privy with the United States have been considered to be Miller

Act bonds, the form of the bond, at least, was identical with Standard Form 25A. Appellants' third assertion, that C&C is not a person covered by the Miller Act because it was not a "first tier" or "prime contractor" in direct privity with the United States, is essentially a restatement, or at best a distillation, of its first argument above. Appellants' fourth contention is that the work performed by Hillsdale was not the type of work for which reimbursement was envisioned by the Miller Act. They argue that Hillsdale has made no showing that the paving work for which the claim was made involved the "construction, alteration, or repair of any public building or public work of the United States" as required by 40 U.S.C. § 270a.

C&C's and UPIG's second major point is that, even if we found the "payment bond" here in issue to be a Miller Act bond, the notice given by Hillsdale was insufficient under that Act. They note that Hillsdale has conceded that it did not use certified mail, as required by 40 U.S.C. § 270b, and argue that since plaintiff failed literally to comply with the Act, it should not be allowed to recover.

Plaintiff effectively counters each of the defendant/appellants' arguments. It argues that C&C's bond was a Miller Act bond, noting that this court has previously stated that a sub-contractor could execute a Miller Act bond to the United States jointly with another party, who was, in name, the prime contractor. Hillsdale reasons that Stanford, in the case at hand, although nominally the prime contractor, and in privity with the United States, was really acting as an agent of the AEC. Stanford performed *none* of the construction functions, but acted in the place of the AEC to develop procedures and to contract for the construction of the Stanford Linear Accelerator Center. In such circumstances, contends the plaintiff, C&C was, in fact, the "contractor" contemplated by the Miller Act. Thus, concludes plaintiff, it should be irrelevant to our current determination whether or not C&C was technically a "first tier" contractor.

Additionally, Hillsdale asserts that the actual form of the bond given by C&C should not control our decision. The bond was designed, argues Hillsdale, specifically to comply with the Miller Act, while allowing for joint obligees, and was utilized with the knowledge and approval of the United States to provide for the protection of contractors in the tiers "below" C&C.

Hillsdale answers the defendant/appellants' "type of work" argument by pointing to specific paragraphs in the Agreed Statement of Facts which indicate that the plaintiff satisfactorily completed construction work, consisting of paving and including the provision of labor and materials. Significantly, plaintiff points to the Declaration of Thomas Cole, President of C&C, in which he stated:

I have no reason to dispute the fact that HILLSDALE ROCK CO., INC. did perform the work and supply the materials for which it now makes claim.

Finally, Hillsdale argues that any failure to follow the notice procedures outlined in the statute should not be determinative of the issues now before us because there has never been any doubt that Stanford, C&C, and UPIG all received *actual notice* of Bottari's defalcation prior to the ninety-day time limit outlined in the statute. Since the detailed notice provisions of the statute are calculated merely to ensure notice is received and to protect the noticing party where the receipt of notice is contested, an overly strict reading of the notice statute would, argues Hillsdale, serve no useful purpose in the case at hand. For the reasons detailed below, we agree with the plaintiff, Hillsdale.

The threshold question in this case is whether the bond given by C&C was a Miller Act bond. Highly analogous situations have been dealt with previously in this Circuit in the cases of *United States ex rel. West Pacific Sales Co. v. Harder*, 225 F.Supp. 699 (D.C.Or.1963) and *Fidelity and Deposit Co. of Maryland v. Harris*, 360 F.2d 402 (9th Cir. 1966), which explicitly approves *Harder* and which was relied upon by the District Court here.

The *Harder* case is practically indistinguishable on its facts from the present case. The AEC contracted with a "prime contractor" (Kaiser) who subcontracted with Harder, who executed a "payment bond" in favor of the U.S. and Kaiser jointly. Pacific then sued Harder for recovery on this "payment bond." The District Court rejected Harder's argument that the Miller Act applied only where the bond (naming the U.S. as sole obligee) was executed by a "prime" contractor, found the Miller Act applicable, and allowed recovery by Pacific.

In *Harris*, a much more complicated case factually, this court enthusiastically approved the reasoning of *Harder* insofar as it concluded that a "lower tier" contractor could execute a Miller Act bond because the "contractor" contemplated by the Miller Act might not be labelled "prime" in all circumstances.

■ We find the rationale expressed in both the *Harder* and *Harris* opinions to be highly persuasive. It is clear that, whatever may be the labels assigned to the various tiers of contractors here, Hillsdale, as did Pacific, stood functionally and practically in exactly the position which the essentially remedial Miller Act was calculated to benefit and protect. We find no compelling argument against this rationale and, therefore, conclude that, insofar as the position of the respective contractors is concerned, the bond in issue here is a Miller Act bond.

The defendant/appellants' arguments concerning the form of the bond do not upset this conclusion. Although C&C and UPIG strenuously asserted that the bond offered by C&C was not identical with the Standard Form 25A,[1] and although an inspection of the bond and the Standard Form does indicate some distinctions, it is clear that one of Stanford's responsibilities under its contract with the AEC was to develop procedures and that, in keeping with the contract, Stanford's legal department designed the "payment bond" now in

1. The Substance of Standard Form 25A is provided at 41 C.F.R. § 1–16.901–25A (1977).

issue specifically to comply with the requirements of the Miller Act. Stanford's form was then utilized with the knowledge and approval of the U.S. It is also apparent that, since Standard Form 25A did not provide for joint obligees, any attempt to draft a bond which did allow the maker to name joint obligees would have required at least some alteration to the Standard Form.

■ There also appears to be little question that the work performed by Hillsdale was the type of work intended to be covered by the Miller Act. The record before us indicates that the plaintiff's work included "prime coat, asphaltic material and fog seal in place" and was performed at the "General Services Building and parking area, Stanford Accelerator Center, Stanford, California." This evidence alone clearly supports a conclusion that Hillsdale's efforts were involved in the "construction, alteration, or repair of any public building or public work of the United States" as required by 40 U.S.C. § 270a.

■ Finally, it is apparent from the record that, although Hillsdale did not meticulously follow the registered mail portions of the notice requirements outlined in 40 U.S.C. § 270b,[2] all relevant parties received *actual notice*, within the ninety-day time period allowed by the section, by regular United States mail, of Bottari's defalcation. Indeed, as was pointed out at oral argument, neither C&C nor UPIG has ever denied the receipt of actual, timely notice.

Faced with analogous circumstances, other courts have often held that actual notice is sufficient to fulfill the notice or accuracy requirements of the Act. *See, e. g., United States ex rel. Kelly-Mohrhusen Co. v. Merle A. Patnode Co.*, 457 F.2d 116, 118–19 (7th Cir. 1972); *Houston Fire and Casualty Ins. Co. v. United States ex rel. Trane Co.*, 217 F.2d 727 (5th Cir. 1954). Of particular relevance and significance, however, is the decision of the United States Supreme Court in *Fleisher Eng'r & Constr. Co. v. United States ex rel. Hallenbeck*, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12 (1940), in which the Court, espousing liberal construction for a remedial act, held that the notice requirements of the Miller Act were met so long as the relevant contractor received actual knowledge within ninety days. Indeed, it would appear from the *Fleisher* opinion that there is no doubt in the case at hand concerning the legal sufficiency of the notice given by Hillsdale.

For all of the above-stated reasons, we hold that the District Court was correct in construing this payment bond to be a Miller Act bond, in determining that the notice here was sufficient to comply with the Act, and in granting the recovery requested by plaintiff. Accordingly, the judgment of the District Court is

AFFIRMED.

---

2. That section provides, in pertinent part:

Every person who has furnished labor or material . . . in respect to which a payment bond is furnished under section 270a . . . and who has not been paid in full therefor . . . shall have the right to sue on such payment bond for the amount . . unpaid at the time of institution of such suit . . . *Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days . . . stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelop addressed to the contractor at any place he maintains an office or conducts his business, or his residence . . . . .

40 U.S.C. § 270b(a) (1970).