**UNITED STATES of America for the Use and Benefit of B & R, INC., Plaintiff,**

v.

**DONALD LANE CONSTRUCTION, Commercial Industrial Construction & Supply Company, Inc., an Ohio corporation, and National Surety Corporation, a Delaware corporation, Defendants.**

Civ.A. No. 97–198 MMS.

United States District Court, D. Delaware.

Argued Aug. 3, 1998.

Decided Aug. 14, 1998.

G. Kevin Fasic, of Tighe, Cottrell & Logan, P.A., Wilmington, Delaware; for use Plaintiff B & R, Inc.

David S. Lank, of Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, Delaware; Of Counsel: Christopher L. Grant, Washington, DC; for defendants Commercial Industrial Construction & Supply Company, Inc., and National Surety Corporation.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

### Introduction

Use plaintiff B & R, Inc. ("B & R")[1] filed a complaint on April 21, 1997 against Donald Lane Construction ("Lane"), Commercial Industrial Construction & Supply Co., Inc. ("CICS"), and National Surety Corporation ("NSC"). The complaint, which arose out of labor performed by B & R in 1996 as part of a construction project, stated a federal cause of action based on the Miller Act, 40 U.S.C. § 270a *et seq.*, and state law breach of contract and quantum meruit claims. In July 1997, a default judgment was entered against Lane. In January 1998, the plaintiff filed a motion for summary judgment and defendants CICS and NSC filed motions to dismiss and motions for summary judgment on all counts. CICS and NSC filed a motion to amend their answers in March, 1998. This court has jurisdiction over the Miller Act claim pursuant to 28 U.S.C. § 1441, federal question jurisdiction, and over the state law claims pursuant to 28 U.S.C. § 1367, supplemental jurisdiction. For the reasons that follow, the defendants' motion to amend their answers will be granted, the plaintiff's motion for summary judgment will be denied, and defendants' motions to dismiss and for summary judgment will be granted in part and denied in part.

### Standard of Review

Defendants have filed motions to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) and motions for summary judgment under

Fed.R.Civ.P. 56. However, "if matters outside the pleadings are presented to the district court on a motion under Rule[] 12(b)(6)... and the court does not exclude them, the motion must be considered as one under Rule 56 and determined in accordance with summary judgment principles." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir.1992) (citing 6 MOORE'S FEDERAL PRACTICE ¶ 56.02[3] (1991)). *See also Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972) (*per curiam*) (where matters outside the pleadings are "presented and not excluded by the court," a motion to dismiss should be treated as one for summary judgment). Matters outside the pleadings have been submitted to and considered by the Court. Accordingly, defendants' motions as well as plaintiff's motion will be considered motions for summary judgment and reviewed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Under the Federal Rules of Civil Procedure, the Court shall grant summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering a motion for summary judgment, the Court must "view all facts and inferences in the light most favorable to the party opposing the motion." *Stephens v. Kerrigan*, 122 F.3d 171, 176–177 (3d Cir.1997).

The Supreme Court has clarified that the moving party must "bear the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

---

1. A Miller Act suit is brought in the name of the United States for the use of the plaintiff. *See* 40 U.S.C. § 270b (b).

*Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After such a demonstration has been made, however, the nonmoving party must go beyond the pleadings and, based on the same types of evidence, must demonstrate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. The nonmoving party cannot rest on his allegations without "any significant probative evidence tending to support the complaint." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). *See also Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (stating that a non-moving party must "adduce more than a scintilla of evidence in its favor … and cannot simply reassert factually unsupported allegations contained in its pleadings").

On cross motions for summary judgment, the same standard and burdens apply. *See Appelmans v. City of Philadelphia,* 826 F.2d 214, 216 (3d Cir.1987); *Peters Township School District v. Hartford Accident and Indemnity Co.,* 833 F.2d 32, 34 (3d Cir.1987). Further, when presented with cross motions for summary judgment, the Court must consider the motions separately. *See Williams v. Philadelphia Hous. Auth.,* 834 F.Supp. 794, 797 (E.D.Pa.1993), *aff'd mem.,* 27 F.3d 560 (3d Cir.1994).

### Statement of Facts

In March 1995, the United States Army Corps of Engineers awarded CICS a construction contract relating to the dining facility at the Dover Air Force Base. During April 1995, CICS, as principal, and NSC, as surety, executed a payment bond in accordance with the Miller Act, 40 U.S.C. § 270a(a), which requires such bonds to ensure the "protection of all persons supplying labor and material in the prosecution of the work" provided for under such contracts. *Id.* Soon thereafter, CICS entered into a subcontract with Lane for the provision of labor and materials in connection with the Dover project. In May of 1996, Lane entered into a verbal agreement with B & R by which B & R would provide labor needed to fulfill Lane's contract with CICS.

From May 28, 1996 through July 11, 1996, B & R engaged in work pursuant to its contract with Lane. Lane signed B & R's time cards, thereby accepting the work and the obligation to compensate B & R for it. However, Lane failed to pay B & R for $16,061.44 worth of the labor provided. On October 8, 1996, by regular and certified mail, B & R sent all three defendants notice of this outstanding balance and of its intention to file suit if payment was not forthcoming by the end of that same day. Lane and CICS signed for and received the letter on October 11, 1996; NSC signed for and received the letter on October 16, 1996. NSC and CICS refused to pay for B & R's labor and asserted that it was part of the deficient work for which they were not compensated by the government.

### Discussion

### I. Miller Act

With respect to the Miller Act count, CICS and NSC argue that plaintiff has forfeited its right to sue under the Act because CICS did not receive notice of the impending lawsuit within ninety days of B & R's last day of work.[2] The defendants assert that such re-

---

**2.** The Miller Act provides:

(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under sections 270a to 270d of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied

ceipt is a condition precedent to plaintiff's right to a cause of action under the Act. Plaintiff responds that it satisfied the notice requirement by sending notice within the period of time prescribed by the Act. Moreover, plaintiff avers that defendants waived an untimely notice affirmative defense. Defendants have responded with a motion to amend their answers.

### A. Failure to Plead Untimely Notice Defense

Plaintiff argues that defendants waived their untimely notice defense by not asserting it in their answers to the complaint, which alleged fulfillment of the ninety day notice provision.[3] See D.I. 1 at 5, ¶ 16. Neither defendant asserted an affirmative defense based on inadequate notice and only NSC denied plaintiff's allegation that notice was given within the required period of time. See D.I. 6 at 2, ¶ 16; D.I. 7 at 2, ¶ 16.[4] On March 6, 1998, in response to the briefing that arose from the defendants' motions for summary judgment, the defendants filed a motion for leave to amend their answers to

> or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business ...
> 40 U.S.C. § 270b.

3. Plaintiff also avers the defendants expressly admitted the notice provision was satisfied. The Court disagrees. First, NSC did deny plaintiff's allegations as to notice. See D.I. 7 at 2, ¶ 16. Of course, because the Miller Act requires notice to the contractor, NSC's denial of adequate notice does not save CICS. Second, CICS admitted the allegations in paragraph 16 of the complaint only as to "the *form* of notice." D.I. 6 at 2, ¶ 16 (emphasis added). The Court interprets this admission as going to the fact that paragraph 16 of the complaint states notice was given by "regular and certified mail," D.I. 1 at 5, ¶ 16, rather than to the portion of the paragraph stating the time frame in which the notice was received. However, because all allegations not denied are deemed admitted, see FED. R. CIV P. 8(d), this disagreement becomes inconsequential.

The defendants stressed at oral argument that their answers denied plaintiff "complied with all of the conditions required of it under the ... Miller Act." D.I. 1 at 5, ¶ 18; D.I. 6 at 2 ¶ 18; D.I. 7 at 2, ¶ 18. Nevertheless, as defendants acknowledged at oral argument, this general denial cannot cure CICS's failure to deny the spe-

deny plaintiff's allegation of timeliness and to include untimely notice as an affirmative defense.

The parties agree the rules of civil procedure require the pleading of affirmative defenses under penalty of waiver and provide that allegations in a complaint that are not denied are considered admitted. See FED. R. CIV. P. 8(b)-(d), 12(a)-(b); see also Security Services, Inc. v. K Mart Corp., 996 F.2d 1516 (3d Cir.1993) (relying, inter alia, on Fed. R.Civ.P. 8(c) to hold that the affirmative defense was waived by defendant's failure to plead it), aff'd, 511 U.S. 431, 114 S.Ct. 1702, 128 L.Ed.2d 433 (1994); 2 MOORE'S FEDERAL PRACTICE ¶¶ 8.07[3] & 8.08[1] (3d ed.1998) (discussing waiver of affirmative defenses and failure to deny allegations); CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 5 FEDERAL PRACTICE AND PROCEDURE § 1261 & § 1278 (1998) (same); CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 5A FEDERAL PRACTICE AND PROCEDURE § 1394 (1998) (discussing waiver of affirmative defenses).[5] In addition, the defendants recognize that by not amending their answers as of right with-

cific allegation as to notice and to assert an affirmative defense of untimely notice.

4. Defendants also did not, as required by the federal rules of civil procedure, deny the performance or occurrence of a condition precedent "specifically and with particularity." FED. R. CIV P. 9(c).

5. Plaintiff also asserted at oral argument that the 90 day notice provision, while a condition precedent, was equivalent to a statute of limitations. According to plaintiff, statutes of limitations defenses are incurably waived when not specifically pleaded and, therefore, the failure to plead untimely notice cannot be cured. Plaintiff could not, however, point to any authority for either of these propositions and the Court is not aware of any. In fact, a condition precedent is a condition "which must happen or be performed *before* ... some right dependent thereon accrues ...." BLACK'S LAW DICTIONARY 266 (5th ed.1979) (emphasis added). In contrast, a statute of limitations "declar[es] that no suit shall be maintained on such causes of action ... unless brought within a specified period of time *after the right accrued.*" Id. at 835. Under the Miller Act, the 90 day notice provision serves as a condition precedent to the right to file an action, 40 U .S.C. § 270b(a), while there is a one year statute of limitations on filing suit after the right has accrued. See 40 U.S.C. § 270b(b).

in twenty days of their service upon the plaintiff, they may only amend them by leave of the court when the plaintiff, as in this case, will not consent to such an amendment. *See* FED. R. CIV. P. 15(a).

■ The relevant rule on amendments provides that leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15. Although the decision of whether to grant or deny the amendment is within the discretion of the district court, the phrase "freely given" should be accorded full effect. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); 3 MOORE'S FEDERAL PRACTICE ¶ 15.14[1] (3d ed.1998) (stating that "a liberal, pro-amendment ethos dominates the intent and judicial construction of Rule 15(a)" in order to "ensure that all the issues are before the court"); 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1394 (2d ed.1998) (same); *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 887 (3d Cir.1992) (same). The liberal nature of Rule 15 has led the Supreme Court to hold that a motion to amend should be granted unless the Court finds that there has been undue delay, the motion is being made in bad faith,[6] former amendments have not been used to cure the deficiency at issue, the allowance of the motion would unduly prejudice the non-moving party's case or the

amendment would be futile. *See Foman*, 371 U.S. at 182, 83 S.Ct. 227.

■ The complaint was filed on April 21, 1997. Defendants answered on May 14 and May 23, 1997. In this case, there has been no prior attempt to amend, there is no evidence the motion has been made in bad faith, and the amendment would not be futile. Moreover, plaintiff has articulated no prejudice it will suffer by virtue of the amendment. Similarly, the Court can not identify any prejudice other than the burden of pursuing the case in state court at a later date than plaintiff would have otherwise.[7] Such prejudice is clearly insufficient to deny the motion to amend, as there must be some showing that plaintiff's "ability to present its case would be seriously impaired were amendment allowed." *Dole v. Arco Chemical Co.*, 921 F.2d 484, 488 (3d Cir.1990) (citing *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir.1989)); *see also Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir.1993) (stating that the prejudice element requires "substantial or undue prejudice").

This case does, however, present an issue of delay. The motion to amend was made over nine months after the answer was filed and approximately a year after the complaint was filed. Defendants have proffered no reasonable justification for this delay.[8] Never-

---

**6.** The Court is interpreting "bad faith" to include actual or constructive fraud; a design to mislead or deceive; or a neglect or refusal to fulfill some duty or contractual obligation not prompted by an honest mistake but rather by some interested or sinister motive. *See* BLACK'S LAW DICTIONARY 127 (5th ed.1979). Although defendants' delay in presenting the notice issue may very well demonstrate carelessness, there is no evidence defendants delayed with any nefarious purpose. On the contrary, it would have been in the defendants' interest to identify the notice problem earlier and bring it to the Court's attention. Although the Court is troubled by defendants' arguments regarding the reasons for the delay, *see infra* note 9, the reasons do not reflect any sinister motive.

**7.** The Court cannot discern any discovery that proceeded based only on the Miller Act claims, nor does it appear that plaintiff would have voluntarily dismissed the action had the Miller Act claims been more quickly resolved. Moreover, one of the defendants raised the untimely notice issue in its first case dispositive motion. As a

result, it appears plaintiff has not incurred unnecessary costs in maintaining its Miller Act claim up to this point. Further, the addition of the untimely notice affirmative defense does not appear to add future time or cost to the plaintiff. Finally, because one of the defendants argued untimely notice in its first case dispositive motion submitted two months before the motion to amend, the latter motion does not constitute unfair surprise.

**8.** The Court rejects defendants' argument that they did not know the date of notice until January 5, 1998, when they received copies of the return receipts as attachments to plaintiff's opening brief in support of its motion for summary judgment. There are three problems with defendants' argument. First, at least one of the defendants had a copy of the notice envelope with the date of delivery stamped on it and other documents indicate at least one of the defendants acknowledged in December it had received notice in October. Contrary to defendants' assertion, these discrepancies are not "irrelevant." D.I. 32 at 1. Second, even if plaintiff had never

theless, the Third Circuit Court of Appeals has explained the role of delay in the amendment context:

> The passage of time, without more, does not require that a motion to amend [an answer] be denied; however, at some point the delay will become "undue," placing an unwarranted burden on the court, or will become "prejudicial," placing an unfair burden on the opposing party. *See Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982); *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir.1982). The question of undue delay, as well as the question of bad faith, requires that we focus on the plaintiff's motives for not amending their complaint to assert this claim earlier; the issue of prejudice requires that we focus on the effect on the [plaintiff].

*J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 614 (3d Cir.1987) (quoting *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir.1984)). *See also Lorenz*, 1 F.3d at 1414 (stating that "prejudice to the nonmoving party is the touchstone for the denial of the amendment") (internal quotations omitted); *Coventry v. United States Steel Corp.*, 856 F.2d 514, 518–520 (3d Cir.1988) (holding that delay, without evidence of prejudice to the defendant or burden on the court, was insufficient grounds for denying motion to amend despite long-passed discovery and setting of trial date); *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 939 (3d Cir.1984) (explaining that *Foman* "couples the delay consideration with prejudice to the opposing party").

In light of the fact that no evidence in this case, including the length of the delay, *see Adams*, 739 F.2d at 868 (stating delay can be evidence of bad faith), indicates bad faith or reflects prejudice to the plaintiff, the delay presented by the defendants will not alone override the "presumption in favor of allowing a party to amend pleadings." *Boileau*, 730 F.2d at 938. Although defendants' delay is not laudable, the Court's decision recognizes the rule's purpose of ensuring that all issues are properly before the Court. As stated by the Supreme Court in *Foman:*

> It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. 'The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.'

371 U.S. at 181–182, 83 S.Ct. 227 (quoting *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Defendants' motion to amend will be granted.

### B. *Fulfillment of the Notice Requirement*

■ The Miller Act grants a cause of action to "every person who has furnished labor" as part of a federal public building or work contract subject to the Miller Act and who has not been paid in full "before the expiration of a period of ninety days after the day on which the last of the labor was done ...." 40 U.S.C. § 270b (a). The Act states, however, that the right to sue a contractor with whom there is no express or implied contract does not accrue until the person asserting the action has, "within ninety days from the date on which such person did or performed the last of the labor[,]" "giv[en] written notice" to the contractor which "stat[es] with substantial accuracy the amount claimed and the name of the party ... for whom the labor was done." *Id.*

provided a copy of the return receipt, defendants could not persuasively argue they did not know they received a document for which they signed. By signing for and accepting the notice, the defendants received notice and knew the date of receipt. The fact that one or both of the defendants may have been less conscientious than it should have been in recording the date of receipt is no excuse. Third, it would be unjust to allow defendants to argue plaintiff has the burden not only of notifying defendants of plaintiff's claim but also of ensuring defendants receive a copy of the return receipt card so as to help them remember when the notice was received.

There is no evidence that plaintiff withheld the card in an attempt to defraud any of the defendants; on the contrary, plaintiff was reasonable in believing that defendants knew when they received notice. The Miller Act does not require that plaintiff do more than notify defendants of plaintiff's claim and the Court will not impose a greater burden.

Because notification is a condition precedent to the accrual of plaintiff's right to sue, the viability of plaintiff's claim rests on its satisfaction of this requirement. The parties agree plaintiff mailed the requisite notice on the 89th day and CICS, the contractor, received the notice on the 92nd day after the last day on which labor was performed by the plaintiff. Unsurprisingly, the central dispute around plaintiff's Miller Act claim focuses on whether the notice provision requires plaintiff to send notice within ninety days or defendant to receive notice within that time. The Court holds that notice must be received within ninety days.

Although few courts have specifically ruled on this issue, the majority of those courts that have ruled, including this district, have held that notice must be received within ninety days. *See Pepper Burns Insulation, Inc., v. Artco Corporation,* 970 F.2d 1340, 1343–1344 (4th Cir.1992); *United States for the Use of General Electric Co. v. H.I. Lewis Const. Co.,* 375 F.2d 194, 199–201 (2d Cir. 1967); *United States for the Use of Greenwald–Supon, Inc., v. Gramercy Contractors,* 433 F.Supp. 156, 163 (S.D.N.Y.1977); *United States to the Use of Excavation Construction, Inc., v. Glenn–Stewart–Pinckney Builders,* 388 F.Supp. 289, 296 (D.Del.1975); *see also United States for the Use of Hillsdale Rock Co., Inc. v. Cortelyou & Cole, Inc.,* 581 F.2d 239, 243 (9th Cir.1978) (stating in dicta that the contractor must receive actual notice within 90 days).[9] *But see United States for the Use and Benefit of Lincoln Electric Products v. Greene Electrical Service of Long Island,* 252 F.Supp. 324, 327 (E.D.N.Y. 1966), *aff'd,* 379 F.2d 207 (2d Cir.1967);[10] *United States for Use and Benefit of Crowe v. Continental Casualty Co.,* 245 F.Supp. 871, 873 (E.D.La.1965). Although the Miller Act should generally be construed liberally in order to realize its broad, remedial purposes,[11] *see J.W. Bateson Co. v. Board of Trustees,* 434 U.S. 586, 594, 98 S.Ct. 873, 55 L.Ed.2d 50 (1978), courts have emphasized that notice provisions are uniquely instituted for the benefit of the person being notified and, therefore, should be strictly construed in the recipient's favor. *See General Electric,* 375 F.2d at 200–201; *Pepper Burns,* 970 F.2d at 1343–1344; *United States ex rel. John D. Ahern Co., Inc. v. J.F. White Con-*

9. The *Hillsdale Rock* court's conclusion that notice must be received within 90 days was based predominantly on *Fleisher Engineering & Construction Co. v. United States for the Use and Benefit of Hallenbeck,* 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12 (1940). According to the *Hillsdale Rock* court, *Fleisher Engineering* "held that the notice requirements of the Miller Act were met so long as the relevant contractor received actual knowledge within ninety days." 581 F.2d at 243. This Court is not sanguine that the Supreme Court clearly held receipt of notice was required. In addressing whether written notice that had not been sent by registered mail was a sufficient *means* of notice when receipt was admitted, the Supreme Court wrote:

> We think that the purpose of this provision as to manner of service was to assure receipt of the notice, not to make the described method mandatory so as to deny right of suit when the required written notice within the specified time had actually been given and received. In the face of such receipt, the reason for a particular mode of service fails. It is not reasonable to suppose that Congress intended to insist upon an idle form. Rather, we think that Congress intended to provide a method which would afford sufficient proof of service when receipt of the required written notice was not shown.

*Fleisher,* 311 U.S. at 19, 61 S.Ct. 81. The other courts cited in the text as requiring receipt within the 90 day time period did not rely on *Fleisher Engineering.*

10. Although the language in the Second Circuit Court of Appeals' affirmance in *Lincoln Electric* indicates support for the district court's holding that the ninety day limitation applies to the date the notice was sent, *see* 379 F.2d at 209, this supporting dicta is only indirect. Moreover, the three-judge panel in *Lincoln Electric* does not mention the contrary holding of the same court's decision in *Lewis* only three months before. *Lewis* explicitly held that the notice must reach the intended party within the 90 day time limit. *See* 375 F.2d at 199–201.

11. The Miller Act was passed in 1935 as a

> response to the unavailability of mechanics' liens to those providing services or materials for the construction of buildings or works for the federal government. Consistent with the substantive protections afforded by its predecessor, the Heard Act of 1905, the Miller Act was designed to strengthen the existing rights of laborers on public works by shortening the period within which action may be instituted by them against a surety. H.R.Rep No. 1263, 74th cong., 1st Sess., 1–2 (1935); S.Rep. No. 1238, 74th Cong., 1st Sess., 1 (1935).

*U.S. for the Use and Benefit of Dragone Bros. Inc., v. Moniaros Contracting Corp.,* 882 F.Supp. 1267, 1272–1273 (E.D.N.Y.1995).

*tracting Co.,* 649 F.2d 29, 31 (1st Cir.1981); *U.S. for Use of American Builders & Contractors Supply v. Bradley Const.,* 960 F.Supp. 145, 147 (N.D.Ill.1997); *Greenwald–Supon,* 433 F.Supp. at 159. The occasional need to carve out such an exception to the general rule of liberal construction has been recognized by the Supreme Court, which has stated that the remedial purposes of the Miller Act will not justify ignoring clear limitations imposed by the statute. *See Bateson,* 434 U.S. at 594, 98 S.Ct. 873.

According to the courts requiring receipt of notice, strict construction of this provision avoids double payments by the contractor and delays in settlements between contractors and subcontractors.[12] *See General Electric,* 375 F.2d at 201. In addition, requiring receipt within the 90 days provides the contractor with a date certain, which prevents him from being exposed for an indefinite period of time to stale claims about which he had no notice. *See Pepper Burns,* 970 F.2d at 1343–1344.

In addition to the basic purpose of notice provisions and the resulting strict construction generally accorded them, commentators on contract law argue cogently that the notice provision should require receipt within the given time frame.[13] As Williston wrote under the heading *"When is Giving Notice a Condition?"*:

> In it [sic] widest meaning, [notice] includes any means by which knowledge or intelligence is communicated. * * * In general, a person has notice of a fact only when it is communicated to him in such a way that his mind could and did take cognizance of it. But information actually communicated to a party by an authorized person, or actually derived by him from a proper source, is notice. * * * The essence of notice, when sufficient in form and content, is its objective consequence on the one who receives it, not the subjective attitude of the one who gives it. * * * Where a statute requires notice to be given, it is generally held that actual notice is required, and that notice must be personally served on the person to be notified.

SAMUEL WILLISTON, A TREATISE ON CONTRACTS § 887B, at 506–507, 511 (3d ed. by Walter H.E. Jaeger, 1962) (footnotes omitted); *see also* 66 C.J.S. *Notice* § 2. In light of the significance of notice as a condition within a contract, the Court interprets the term "give" in the Miller Act to mean "to put into the possession of another for his use." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 959 (1971). *See also Pepper Burns,* 970 F.2d at 1343 (holding that giving notice requires that notice be "put in the possession" of the contractor).

The above discussion rejects the position of the *Crowe* court, which held that mailing notice was sufficient. *See* 245 F.Supp. at 873. The Court's disagreement with *Crowe* derives from two sources. First, the *Crowe* court's holding is based on a premise that notice as a condition precedent should be analyzed similar to notice in the context of acceptance. However, as stated in *Corbin on*

---

**12.** The Second Circuit Court of Appeals explained:

> It was assumed [by Congress] that [laborers and materialmen] will first endeavor to collect from the subcontractor with whom they have a contract relation. During a reasonable period, while these efforts are going forward, the contractor withholds the payments due the subcontractor. If he receives a third party claim within ninety days, he reserves appropriate amounts from monies otherwise owing to the subcontractor. But, once ninety days have elapsed without such notice, he is free to pay the subcontractor for the latter's work without risk of liability under his bond to laborers and materialmen whose sole contractual relation is with the subcontractor. A statute which gave rights on the contractor's bond to laborers and materialmen having no contractual relations with him but which did not require timely and adequate notice to him, would lead either to double payments or to interminable delays in settlements between contractors and subcontractors.

*Lewis,* 375 F.2d at 201.

Plaintiff stresses that this argument is irrelevant in the case at bar because there was never any risk of double payment. Be that as it may, the holding today with respect to the Miller Act's notice requirement is not fact specific but rather a general rule of law. Therefore, whether the payment problem presented itself in this case is inconsequential to the decision.

**13.** Receipt of such notice refers to actual or constructive notice. *See* SAMUEL WILLISTON, A TREATISE ON CONTRACTS § 887B, at 507–508 (3d ed. by Walter H.E. Jaeger, 1962).

*Contracts,* notice as a necessary part of "an operative acceptance" is distinct from "notice as a condition precedent." ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 69, at 287 (1963). In fact, the rule regarding acceptance of an offer (i.e., that acceptance is operative upon mailing) is the exception; "most notices sent by mail are not operative unless actually received." *Id.* at § 78, at 336; *see also* FARNSWORTH, CONTRACTS § 3.22, at 184–185 (2d ed.1990) (listing some exceptions to the "mailbox rule," which is the common phrase for the idea that a communication is valid upon mailing). Further, if notice of a lawsuit is to be compared to a different aspect of contract law, the law of acceptance is not necessarily the best analogy. Such notice is arguably more like revocation or termination of a contract, which is not operative until received. *See* CORBIN ON CONTRACTS § 78, at 340; FARNSWORTH, CONTRACTS § 3.22, at 182 (2d ed.1990).[14] As a result, an analysis of the Miller Act's notice provision should not be based on an acceptance framework.

Second, the Court disagrees with the *Crowe* court's interpretation of the contract law it cited. *See* 245 F.Supp. at 873, n. 5. Although *Crowe* recognized that a requirement of notice usually refers to receipt, the court interpreted Corbin and Williston as stating that if the mode of notification, *e.g.,* registered mail, is specified, the notice is operative upon mailing. *See id.* This Court does not interpret these texts [15] in this manner. In fact, another section of Corbin's discussion indicates that a notice requirement even for acceptance usually mandates receipt, although mailing remains sufficient for acceptance that is conditioned *only* upon the mode of communication:

> An offeror can always so word his offer and so limit the power of acceptance as to make the receipt of the acceptance necessary to the creation of a contract. Indeed, if he merely says "notice of your acceptance *must be given* within 30 days," this may be held to mean that the *notice must be received* within that time. It would be different if he says, "Please *reply* by post." The latter *specifies a mode of communication but does not make receipt necessary. Where an already completed contract contained a provision creating an option to be exercised by the giving of notice within a stated time, it has been held that it is not enough that the notice was mailed within that time.* Here, the question is one of interpretation of language. *Probably,*

**14.** Moreover, one of the justifications for making acceptance valid upon mailing is that such a rule "clos[es] the deal more quickly and enabl[es] performance more promptly." CORBIN ON CONTRACTS § 78, at 337. In the context of the Miller Act, however, making receipt rather than mailing mandatory within the ninety days provides the most rapid resolution to the question of whether the contractor is going to be subject to liability for unpaid labor and materials.

In addition, placing the burden of the risk on the offeror during contract formation is seen as fair because the offeror has "invited the acceptance." *Id.* In contrast, a contractor under the Miller Act, while ultimately liable for the failings of the subcontractor, has not invited or directly incited the complaint of the unpaid laborer or materialman.

**15.** For the holding that a combination of the term "notice" and a specified mode of communication render a notice provision satisfied upon mailing, *Crowe* relies on three writings on contract law. First, the *Crowe* court relies on *Corbin on Contracts* § 88 (1963), which discusses how the mode of acceptance can be prescribed by the offeror. This section does not, however, state that a requirement of notification does not re-

quire receipt when a mode is specified. Second, *Crowe* relies on section 89 of *A Treatise on the Law of Contracts* (Revised ed.1986), which is entitled *"When a letter of acceptance or of revocation is received within the meaning of the law."* This section focuses on whether a communication is received when it is in the possession of the receiver or when it has been read. Third, *Crowe* relies on 66 C.J.S. *Notice* § 18e(1), n. 92 (1950), dealing with the effectiveness of notice when mailed. The footnote upon which *Crowe* relies cites two state cases which held that the notice provisions of the relevant state statutes on tax deeds were satisfied by mailing. *See Wasden v. Foell,* 63 Idaho 83, 117 P.2d 465 (1941); *Ford v. Genereux,* 104 Colo. 17, 87 P.2d 749 (1939). These holdings have limited applicability to the case at bar. Moreover, the C.J.S. text states that the general rule is that when notice affecting a right is served by mail, the service is not effected until the notice comes into the hands of the one to be served and he acquires knowledge of its contents, unless the receiver intentionally avoids the receipt of notice. *See* 66 C.J.S. *Notice* § 18e(1) (1950). Although the "force of [a] statute" can override this general rule, *id.,* the Miller Act's notice provision does not represent such an exception.

*when parties use the word "notice," they usually mean a communication received.* CORBIN, CORBIN ON CONTRACTS § 78, at 339–340 (1963) (emphasis added).

The Court recognizes that a logic problem may inhere in the language of the statute as the Court has construed it. If the notice must be received within ninety days and the cause of action does not accrue until the end of the ninetieth day, a laborer or material-man must notify a contractor of his intended claim prior to the actual accrual of the right. Nevertheless, this technical inconsistency is minor and reflects the imperfection of drafting legislation; it does not override the arguments in favor of requiring receipt within ninety days.

Plaintiff acknowledged at oral argument that Counts I and IV are equivalent causes of action based on the Miller Act. Therefore, the Court will grant summary judgment for the defendants on both counts.[16]

## II. Breach of Contract

■ Plaintiff conceded at oral argument that it can not pursue a breach of contract action can against CICS or NSC because there can be no such action against a party with whom there is no contract, express or implied. Therefore, plaintiff stated it would only maintain its breach of contract action against the subcontractor, Lane. Accordingly, CICS's and NSC's motions for summary judgment will be granted on the contract action without further discussion.

## III. Quantum Meruit

■ The parties agreed at oral argument that the record is insufficient to establish to what extent, if any, CICS[17] was unjustly enriched by the plaintiff. As a result, additional discovery will be necessary to resolve this state law claim. Further, this case presents novel questions of state law surrounding the ability of a sub-subcontractor to recover in quantum meruit against the contractor when an express contract exists between the contractor and the subcontractor. These state law issues are best resolved by the state court, which is in a better position to answer the questions and can render a decision having binding precedential effect. Therefore, having dismissed the Miller Act claim, which provided the only basis for original jurisdiction in this action, the Court declines to delve into the unchartered territory presented by the quantum meruit claim. *See* 28 U.S.C. 1367(c)(1) & (3). Defendants' motions for summary judgment on this claim will be denied and the case will be dismissed.

## Conclusion

The Court holds the 90 day notice provision of the Miller Act requires notice be received by the contractor within 90 days of the delineated activities. As notice was not received in this case until the 92nd day, the necessary condition precedent to filing suit was not met and defendants' motions for summary judgment will be granted on Counts I and IV. Defendants' motions for summary judgment will also be granted on Count II, the breach of contract claim, pursuant to plaintiff's statement at oral argument that no such cause of action can lie against these defendants. In light of the fact that Count I no longer provides original federal jurisdiction and Count III presents several issues better addressed by the Delaware State Court, the Court declines to exercise jurisdiction over Count III. An appropriate order will issue.

16. As a result of this holding, the Court need not rule on the liability of the contractor versus the surety under the Miller Act or on the relevance of the quality of labor or material furnished for purposes of recovering under the Act.

17. B & R conceded at oral argument that it cannot pursue an action of quantum meruit against NSC, whether or not NSC would ultimately be liable for any judgment B & R receives on that claim against CICS.